**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.11-CV-81373-DMM**

MARK KUNZELMANN;
on behalf of himself and all others
similarly situated;

         Plaintiff,

                                **JURY DEMAND**

v.

WELLS FARGO BANK, N.A. and
WELLS FARGO INSURANCE, INC.

         Defendants.

_____/

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, MARK KUNZELMANN ("Plaintiff"), on behalf of himself and all others similarly situated, files this amended class action complaint against WELLS FARGO BANK, N.A. and WELLS FARGO INSURANCE, INC. (collectively "Defendants"), and alleges as follows:

### I. INTRODUCTION

1.    This is a class action lawsuit filed to redress injuries that Plaintiff, and a nationwide class of consumers, have suffered and will continue to suffer as a result of the practices of Defendants relating to force-placed insurance policies.

2.    Defendants have engaged in a pattern of unlawful and unconscionable profiteering and self dealing in regards to their purchase and placement of force-placed insurance policies in bad faith.

### II. PARTIES

3.    Plaintiff Mark Kunzelmann is a natural person over the age of 21 and otherwise

*sui juris*.

4.      Defendant WELLS FARGO BANK, N.A. ("Wells Fargo Bank") is a national bank registered to do business in the State of Florida with its principal address in San Francisco, California.  As a result of a 2004 merger, Wells Fargo Bank is the successor to Wells Fargo Home Mortgage, Inc., which is now a division of Wells Fargo Bank.  Wells Fargo Bank sometimes does business under the name Well Fargo Home Mortgage.  It is Wells Fargo Bank's practice, when it acquires another bank, lender, or mortgage servicer to become the successor in interest or assign of that bank or lender's home mortgages including those mortgages within the acquired entity's servicing portfolio.  For example, in 2008, Wells Fargo Bank acquired Wachovia Bank, N.A. ("Wachovia") and is the successor in interest and/or assign of Wachovia as to all Wachovia's home mortgages.

5.      Defendant WELLS FARGO INSURANCE, INC. ("Wells Fargo Insurance") is an affiliate of Wells Fargo Bank registered to do business in the State of Florida with its principal address in Minnesota.  Wells Fargo Insurance sells a variety of personal insurance products to consumers, including customers of Wells Fargo Bank.  Wells Fargo Insurance also provides broker services only for Wells Fargo Bank and its affiliates and consequently is the captive insurance broker for Wells Fargo Bank.  Upon information and belief, Wells Fargo Insurance performs no functions related to the force-placed insurance process, yet collects a "commission" that is a percentage of the cost of each force-placed insurance premium.

### III. JURISDICTION AND VENUE

6.      The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.), requires that this action be brought before this Court.

7.      Plaintiff, Mark Kunzelmann, at all relevant times hereto, was a citizen of the State

of Florida residing in Palm Beach County, Florida.

8.     This Court has jurisdiction over Defendants because they are foreign corporations authorized to conduct business in Florida, are doing business in Florida, and have registered with the Florida Secretary of State, or do sufficient business in Florida, have sufficient minimum contacts with Florida, or otherwise intentionally avail themselves of the Florida consumer market through the promotion, marketing, sale, and service of mortgages or other lending services and insurance policies in Florida.  This purposeful availment renders the exercise of jurisdiction by this Court over Defendants and their affiliated or related entities permissible under traditional notions of fair play and substantial justice.

9.     This Court has subject-matter jurisdiction because the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees, and diversity exists between Plaintiff and Defendants.  28 U.S.C.A. § 1332(a)(1).

10.     In addition, this Court has subject-matter jurisdiction because the amount in controversy exceeds $5 million and diversity exists between Plaintiff and Defendants.   28 U.S.C.A. § 1332(d)(2).  Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated.  28 U.S.C. § 1332(d)(6).

11.     Venue is proper in this forum because at all times relevant hereto, Plaintiff resided in the Southern District of Florida and a substantial portion of the practices complained of herein occurred in the Southern District of Florida, and/or because Defendants have received substantial compensation as a result of doing business in the Southern District of Florida.  Moreover, at all times material to the allegations contained herein, Defendants personally and/or through an agent:

a.   operated, conducted, engaged in, and carried on a business venture in the Southern District of Florida or had an office or agency in the Southern District of Florida; and/or

b.   engaged in substantial activity within this state and district.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of Florida and, as set forth above, Defendants are subject to personal jurisdiction in this district.

13.    All conditions precedent to this action have occurred, been performed, or have been waived.

## IV. FACTUAL ALLEGATIONS

14.    Wells Fargo Bank provides services including but not limited to banking, insurance, investments, mortgage, and consumer and commercial finance across North America. It services over 70 million consumers and entities, and has assets of approximately $1.2 trillion.

15.    One of the many services provided by Wells Fargo Bank is providing and servicing real property mortgages.

16.    Each and every mortgage at issue in this litigation which is owned and/or serviced by Wells Fargo Bank requires borrowers, including Plaintiff, to maintain insurance on their real property.

17.    If the borrower fails to maintain the requisite insurance, the lender or mortgage servicer can purchase insurance for the home, "force place" it, and then charge the borrower the full cost of the premium.  Once a lapse occurs, Plaintiff and the Class have no way of refusing the force-placed charges.

18.    To accomplish this forced placement, Wells Fargo Bank, in bad faith, entered into

exclusive arrangements with Assurant Inc. ("Assurant") and other insurers whereby Wells Fargo Bank secures coverage of the consumer's property and then charges the consumer for the premium it allegedly paid to the insurers' affiliates (in Assurant's case, American Security Insurance Co. ("ASIC")).   Force-placed insurance policies are extremely lucrative for the insurers and their affiliates and generate extremely high profit margins.  For example, Assurant collected $2.7 billion in premiums in 2010 through its specialty insurance division which is primarily dedicated to force-placed insurance.

19.    The premium prices or charges for force-placed insurance are not arrived at on a competitive basis and are significantly higher than those available to Defendants in the open market.  Accordingly, no good faith, arms-length transactions are taking place.

20.    As a result, the amounts charged by Wells Fargo Bank for force-placed insurance policies are many times more than what the borrower paid for voluntary coverage and many times more what Wells Fargo Bank would have paid if it had obtained insurance coverage on a competitive basis on the open market and without the exclusive arrangements described above. Moreover, the force-placed insurance policies provide less coverage than voluntary insurance policies, as they protect only the lender's interest in the property.

21.    The force-placed insurance scheme operates in the same manner for all class members.  For example, Wells Fargo chose an arrangement with Assurant whereby when a borrower's voluntary policy lapses, Wells Fargo Bank advances the cost of the premium (which is ultimately charged to the borrower) to Assurant, which in turn forwards the payment to one of its own exclusive carriers.  It then kicks back payments, thinly disguised as commissions, to Wells Fargo Insurance and/or Wells Fargo Bank or other Wells Fargo affiliates.  Wells Fargo specifically selected a force-placed insurer that would provide it unwarranted kickbacks, making

the policy more expensive than it otherwise would have been. These kickbacks are directly tied to the cost of the force-placed insurance and are usually a percentage of the total cost of each premium.

22.     In addition, upon information and belief, Assurant provides additional kickbacks by entering into reinsurance agreements with Wells Fargo pursuant to which Wells Fargo is paid premiums without assuming a commensurate risk for claims made under the reinsurance policies.

23.     This arrangement provides the mortgage servicer, here Wells Fargo Bank, with an incentive to purchase and maintain the highest priced force-placed insurance policy possible on a non-competitive basis – the higher the cost of the insurance policy, the higher the commission or kickback. Ultimately, the homeowner pays the bill.[1]

24.     The "commissions" or kickbacks are paid by the insurer or its affiliated insurance companies to Wells Fargo Bank and/or Wells Fargo Insurance in order to keep their pre-existing, uncompetitive, and exclusive relationship going, incentivize Wells Fargo Bank to purchase high-priced force-placed insurance policies, and to refrain from seeking competitive bids in the market. Wells Fargo specifically selected force-placed insurers (such as Assurant) that would both provide it with unearned kickbacks and place more expensive policies on mortgagors' properties than might otherwise have been obtained on the competitive market.

25.     The insurers monitor Wells Fargo Bank's mortgage portfolio to identify lapsed policies, and generate and send form letters to homeowners in Wells Fargo's name when lapses are detected in voluntary insurance coverage. For example, Assurant generates form letters on

---

[1] Furthermore, upon information and belief, the cost of the high-priced premium is placed by Wells Fargo Bank on a homeowner's mortgage balance thereby increasing the interest paid over the life of the loan by the homeowner to Wells Fargo Bank.

Wells Fargo Bank or Wells Fargo Insurance letterhead, representing to homeowners that Wells Fargo Bank will force place insurance policies on their properties.  The letters represent that Wells Fargo Bank will be assisted by Wells Fargo Insurance in obtaining force-placed insurance policies and that Wells Fargo Insurance will collect commissions for its involvement.

26.     However, Wells Fargo Bank selected exclusive force-placed insurance arrangements with insurers whereby competitively priced insurance policies are not actually "found" for the subject properties.  Wells Fargo Insurance, in fact, plays no role in obtaining a borrower's insurance policy.  Therefore, the notion that any "commission" is due to either Wells Fargo Insurance (or Wells Fargo's insurance partners) is false.

27.     The insurers' agreements with Wells Fargo Bank provide that all properties within the portfolio that they monitor are covered by an "umbrella" insurance policy whereby the property is automatically covered whenever a homeowner's voluntary policy lapses.  Insurance is automatically placed on the property and the premium is ultimately charged to the homeowner even if the lapse is discovered many months or years later.  Homeowners pay for retroactive or backdated coverage even if no claims were made or damage to the property occurred during the lapse in coverage.

28.     When a lapse in a homeowner's insurance is discovered, the insurers initiate an automatic process that is the same for all homeowners.  For example, Assurant's software begins a cycle, at regular intervals, of form letters, form insurance policies, and "binders" purporting to come from Wells Fargo that are sent to the homeowners regarding the lapse in insurance and the force-placement of insurance through Assurant's and Wells Fargo Bank's exclusive carrier.  The provider of the insurance and the cost of the insurance are pre-determined under this relationship.  This automatic process is the same for all homeowners, regardless of which insurance company

is providing the force-placed policy.

29.    Wells Fargo Bank pays the insurers not only for force-placed insurance premiums, but also for a bundle of services including performing Wells Fargo Bank's job of administering and servicing the mortgages (monitoring Wells Fargo Bank's portfolio for lapses and providing notification and customer service to homeowners under the mortgage).  This bundle of administrative services includes Wells Fargo Bank's cost of monitoring and servicing its portfolio of loans and is not properly chargeable to Plaintiff or the Class under their mortgages.

30.    For example, Assurant agrees to provide this bundle of administrative services at below market cost as a direct result of Wells Fargo's selection of it as the exclusive insurance provider.

31.    Generally, the high-cost charges are added to the mortgage's principal balance or removed from their escrow accounts.

32.    The actions and practices described herein are bad-faith and unconscionable practices that constitute an abusive and unlawful use of Wells Fargo Bank's contract powers. Defendants place these high-priced insurance policies on Plaintiff and the similarly situated Class Members' mortgages without regard for competition on the open market or any effort to obtain a commercially reasonable price.  The goal is solely to maximize profits by charging high prices and collecting unjustified kickbacks.  Said conduct is prohibited by law.

33.    Plaintiff does not dispute that Wells Fargo Bank is entitled under Plaintiff's and each Class Member's mortgage to purchase force-placed insurance, however, Plaintiff does maintain that said purchase must be done in good faith.

34.    Plaintiff does not seek to prevent or significantly interfere with Defendants'

ability to force place insurance coverage.  Plaintiff seeks only to ensure that Wells Fargo Bank perform its practices lawfully and in good faith.

35.     Defendants' manipulation of the force-placed insurance process and purchases has maximized their profits to the great detriment of Plaintiff and the Class.

36.     Defendants were not, and are not, authorized by any federal, state, or local governing body, contract, or agreement to manipulate their force-placed insurance purchases in bad faith as alleged above.

37.     Furthermore, these fraudulent practices have recently come under fire by all fifty State Attorneys General as part of a nationwide investigation.  And, as the State Attorneys General have recognized, this practice has greatly contributed to the foreclosure crisis.

38.     The Florida Department of Insurance and/or the Office of Insurance Regulation ("OIR") govern rates filed by insurance companies.  Although the OIR governs insurance rates filed by insurance companies, this is not an action against an insurance company and, therefore, not subject to Fla. Stat. § 627.371(1), which provides an administrative remedy against insurance companies for insured persons aggrieved by insurance rates.

39.     Wells Fargo Bank is not an insurance company and, therefore, is not regulated by the Florida Department of Insurance and/or the OIR.  Wells Fargo Bank is a financial institution, subject to the regulations set forth in Chapter 655, Florida Statutes.  Fla. Stat. § 655.946, which permits a financial institution to purchase force-placed insurance to cover the institution's property interest which is security for a loan or indebtedness.  Section 655.946 does not contain any administrative remedies for a borrower, like Plaintiff, to challenge high cost policies placed by their lender or unearned commissions associated with obtaining "force-placed" insurance coverage.  Unlike the OIR, which establishes an administrative remedy for insured persons

seeking to challenge excessive insurance rates, the Office of Financial Regulation ("OFR") has no such administrative remedy in place. Consequently, the only recourse for borrowers, like Plaintiff, who are charged high and artificially inflated premiums for force-placed insurance coverage by their lenders is to bring a civil claim against the lender.

40.    Moreover, Plaintiff does not challenge the actual insurance rates filed with the various state agencies. Plaintiff instead challenges the uncompetitive and unfair method that Wells Fargo used to select its insurer, which has resulted in the collection of unearned commissions and a windfall for Defendants.

### A.    Plaintiff Mark Kunzelmann

41.    Plaintiff Mark Kunzelmann obtained a mortgage from Wachovia secured by a parcel of real property in Florida. The mortgage loan was serviced by Wells Fargo, who is also the successor in interest and/or assign of the mortgage.

42.    From the inception of the mortgage until February 23, 2010, Mr. Kunzelmann maintained in full force and effect the insurance required by the mortgage contract. The annual premium for his homeowner's insurance was approximately $2,000. However, on February 23, 2010, unbeknownst to Mr. Kunzelmann, the policy lapsed due to an oversight that led to nonpayment.

43.    Mr. Kunzelmann's insurance company at that time – Fidelity National Property and Casualty Insurance Company ("Fidelity") – never notified Mr. Kunzelmann or his insurance agent at Gracey Backer Inc. that his policy had lapsed for non-payment.

44.    In January 2011, Mr. Kunzelmann refinanced his mortgage with Wells Fargo Bank. At the time, Mr. Kunzelmann believed that his insurance through Fidelity was still in full force and effect.

CASE NO. 11-CV-81373-DMM

45.     Wells Fargo Bank never asked Mr. Kunzelmann for proof of his homeowner's insurance nor did they inform him at that time that his Fidelity policy had lapsed.

46.     On June 29, 2011, Mr. Kunzelmann received a letter purporting to come from Wells Fargo Bank[2] entitled "Notice of Expiration of Insurance" that asked Mr. Kunzelmann to provide proof of current insurance.  The letter indicated that Mr. Kunzelmann's insurance had expired on January 31, 2011, the date his mortgage refinance loan closed.

47.     Approximately two weeks later, on July 14, 2011, Mr. Kunzelmann received another letter purporting to come from Wells Fargo Bank that notified him that Wells Fargo Bank had secured temporary insurance for the property through ASIC.  Accompanying this letter was a sixty-day Insurance Binder showing that it retroactively covered the period of January 31, 2011 to April 1, 2011.  The annual premium indicated on the binder is $18,522.04.  Also accompanying this letter was a solicitation letter purporting to come from Wells Fargo Insurance and offering to sell Mr. Kunzelmann homeowner's insurance.

48.     This second letter, and its accompanying insurance binder, was the first notification given to Mr. Kunzelmann of the amount that Wells Fargo Bank sought to collect from him.

49.     Around the time these form letters were being sent to Mr. Kunzelmann, he was contacted on the phone while on vacation from a representative claiming to be from Wells Fargo Bank and asking him to provide proof of his homeowner's insurance.  At that time, Mr. Kunzelmann was still unaware that his prior policy had lapsed and informed the representative that he would provide proof of insurance when he returned from vacation.

50.     Upon his return, and after contacting his insurance agent, he learned of the lapsed

[2] The letterhead denotes that it is coming from Wells Fargo Home Mortgage, which is a division of Wells Fargo Bank.

policy and immediately sought to renew his homeowner's insurance through Fidelity.

51.     Mr. Kunzelmann also immediately contacted what he believed to be Wells Fargo Bank, through the customer service phone number provided on the form letters, and explained the oversight and stated he would be procuring a policy through Fidelity.   In fact, Mr. Kunzelmann was speaking with a representative from Assurant.

52.     Mr. Kunzelmann purchased the new policy through Fidelity on August 25, 2011. The annual premium for that policy was $2,535.   The cost of the insurance policy through Fidelity was more than 7 times less than the policy force-placed by Wells Fargo Bank, Assurant, and ASIC.

53.     Approximately one week later, Mr. Kunzelmann received a third notice, dated August 26, 2011, from Wells Fargo Bank informing him it had purchased an insurance policy for the property through ASIC and the cost of the policy was being charged to his escrow account. The policy period was from January 31, 2011 to January 31, 2012 with the annual premium totaling the aforementioned $18,522.04.

54.     Mr. Kunzelmann immediately contacted the customer service number provided on the letters to explain that he had a current insurance policy.   The customer service representative assured him that the insurance through American Security would be canceled and he would not be charged for the force-placed insurance premium.   In October 2011, Mr. Kunzelmann received his escrow account disclosure statement, dated October 3, 2011, which indicated that his account was debited approximately $10,525.00 for the force-placed insurance.

55.     Mr. Kunzelmann again contacted the customer service number on the letters and, after inquiring as to what company he was speaking with, was told for the first time that he was talking to an employee of Assurant and not an employee of Wells Fargo Bank.   The

representative explained that the charge was for the premium of the retroactive force-placed insurance purporting to cover the period of January 31, 2011 to August 24, 2011 and indicated to Mr. Kunzelmann that, contrary to what he had been told, he would not be receiving a refund for the amount debited from his escrow account.

56.     The form letters sent to Mr. Kunzelmann represented that they were being sent either from Wells Fargo Bank or Wells Fargo Insurance (a solicitation letter).  The letters, however, were at all times automatically generated and sent by Assurant and not either Wells Fargo entity.

57.     There are no material differences between the Defendants' actions and practices directed to Mr. Kunzelmann and their actions and practices directed to the Class.

## V. CLASS ALLEGATIONS

A.     **Class Definition**

58.     Plaintiff brings this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated. Plaintiff seeks to represent the following class and subclass:

Nationwide Class

> All borrowers who had mortgages with and/or serviced by Wells Fargo Bank, on properties located within the United States, who were charged premiums for force-placed insurance policies within the applicable statutes of limitation through December 20, 2011 ("the Class Period").

> Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

Florida Subclass

> All borrowers who had mortgages with and/or serviced by Wells Fargo Bank, on properties located within the State of Florida, who were charged premiums for force-placed insurance policies within the applicable statutes of limitation through December 20, 2011 ("the Class Period").

Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

59.     Plaintiff reserves the right to modify or amend the definitions of the proposed classes before the Court determines whether certification is appropriate.

60.     Defendants have subjected Plaintiff and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.  The conduct described above is the Defendants' standard and undisputed business practices.

**B.      Numerosity**

61.     The individual class members are so numerous that joinder of all members is impracticable.  The Defendants sell and service millions of mortgage loans and insurance policies in the state of Florida and nationwide.  The individual class members are ascertainable as the names and addresses of all class members can be identified in the business records maintained by the Defendants.  The precise number of class members is certainly more than a thousand and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint and impractical for each to bring suit individually.  Plaintiff does not anticipate any difficulties in the management of the action as a class action.

**C.      Commonality**

62.     There are questions of law and fact that are common to the Plaintiff's and Class Members' claims.  These common questions predominate over any questions that go particularly to any individual member of the Class.  Among such common questions of law and fact are the following:

a.   Whether Wells Fargo breached the mortgage contract with Plaintiff and the Class by failing to seek competitive bids on the open market;

b.  Whether Wells Fargo breached the implied covenant of good faith and fair dealing when it purposefully chose an insurer that would provide kickbacks to Wells Fargo;

c.  Whether Wells Fargo breached the implied covenant of good faith and fair dealing when it kept the kickbacks provided by its insurers, instead of passing the benefit on to members of the class;

d.  Whether Wells Fargo Insurance has done anything to warrant a commission when the selection of the insurance company was predetermined for all class members;

e.  Whether the premiums charged for force-placed insurance were derived from a noncompetitive process;

f.  Whether Defendants have unlawfully unjustly enriched themselves at the expense of the Plaintiff and the Class;

g.  Whether Wells Fargo Bank breached the implied covenant of good faith and fair dealing by entering into an exclusive arrangement with its insurers and their related carriers which resulted in their charging Plaintiff and Class members inflated and noncompetitive amounts for force-placed insurance; and

h.  Whether the Defendants manipulated force-placed mortgage purchases in order to maximize the profits to themselves to the great detriment to Plaintiff and the Class.

**D.    Typicality**

63.    Plaintiff is a member of the Class as Defendants' own records plainly reveal.

Plaintiff's claims are typical of the claims of the Class because of the similarity, uniformity, and common purpose of the unlawful conduct of Defendants. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendants' wrongful conduct.

### E.    Adequacy of Representation

64.    Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent him. There is no hostility between Plaintiff and the unnamed class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

65.    To prosecute this case, Plaintiff has chosen the law firms of Kozyak, Tropin & Throckmorton, P.A., Harke Clasby & Bushman LLP, The Merlin Law Group, and The Law Offices of Jeffrey N. Golant, P.A. These firms are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

### F.    Requirements of Fed. R. Civ. P. 23(b)(3)

66.    The questions of law or fact common to Plaintiff's and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiff and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured and their deceptive and egregious actions involved in securing the force-placed policy.

67.    Common issues predominate where, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

68.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**G.     Superiority**

69.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

> (a) Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;
>
> (b) Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake.  As a result, individual class members have no interest in prosecuting and controlling separate actions;
>
> (c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;
>
> (d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;
>
> (e) Individual suits would not be cost effective or economically maintainable as individual actions; and
>
> (f) The action is manageable as a class action.

**H.     Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

70.     Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that

would establish incompatible standards of conduct for the party opposing the class.

71.     Defendants have acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AS TO ALL CLASS MEMBERS (against Wells Fargo Bank)

72.     Plaintiff re-alleges and incorporates Paragraphs 1 – 56 above as if fully set forth herein and further alleges as follows.

73.     Good faith and fair dealing is an element of every contract and imposes upon each party a duty of good faith and fair dealing in its performance.  Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

74.     Where an agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such determination is implied.

75.     Plaintiff's and the Class Members' mortgage contracts contained a provision that allowed the mortgage servicer to force place an insurance policy on the borrower if their homeowner's insurance lapsed.

76.     Mortgage servicers, like Wells Fargo Bank, are permitted to unilaterally choose the company to purchase force-placed insurance from and have an obligation to exercise their discretion in good faith and not choose the company capriciously and in bad faith (solely for their or their affiliates own financial gain) instead of seeking to continue or reestablish the prior insurance policies or seeking competitive bids on the open market in good faith.

77.     The mortgage contracts and insurance policies of Plaintiff and the Class contained

an implied covenant of good faith and fair dealing whereby Defendants agreed to perform the

obligations under the policies in good faith, to deal fairly with Plaintiff and the Class, and not to

charge unnecessarily inflated fees for the force-placed insurance for the purposes of maximizing

their own profits at the Class's expense.

       78.    Wells Fargo Bank breached its duty of good faith and fair dealing in at least the

following respects:

(a) Using its discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting high-priced force-placed insurance policies to maximize their own profits;

(b) Failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby the insurance policies are continually purchased through the same companies without seeking a competitive price;

(c) Assessing inflated and unnecessary insurance policy charges against Plaintiff and Class and misrepresenting the reason for the cost of the policies;

(d) Collecting a percentage or allowing its affiliates (Wells Fargo Insurance) to collect an unearned percentage of whatever premiums are charged to Plaintiff and the Class and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible;

(e) Selecting insurance companies that would pay unearned kickbacks to Wells Fargo Bank and its affiliates.

(f) Charging Plaintiff and the Class for commissions when the insurance is prearranged and no commission is due; and

(g) Charging Plaintiff and the Class for having its insurers perform Wells Fargo Bank's obligation of administering its mortgage portfolio at below market rates which is not chargeable to Plaintiff or the Class.

       79.    As a direct, proximate, and legal result of the aforementioned breaches of the

implied covenant of good faith and fair dealing, Plaintiff and the Class have suffered damages.

       **WHEREFORE**, Plaintiff, on behalf of himself and similarly situated Class members,

seeks a judicial declaration determining that the premiums charged and the terms of the force-

placed insurance policies violate the duties of good faith and fair dealing.  Plaintiff also seeks compensatory damages resulting from Wells Fargo Bank's breach of their duties.  Plaintiff further seeks all relief deemed appropriate by this Court, including attorneys' fees and costs pursuant to Fla. Stat § 57.105(7).

### COUNT II
### UNJUST ENRICHMENT
### (against Wells Fargo Bank and Wells Fargo Insurance)

80.     Plaintiff re-alleges and incorporates Paragraphs 1 – 56 above as if fully set forth herein and further alleges as follows.

81.     Defendants received from Plaintiff and Class Members a benefit in the form of overcharges related to force-placed insurance policies that include but are not limited to unwarranted kickbacks and commissions and are the result of overcharging and overreaching.

82.     Defendants entered into an agreement whereby its insurers would provide force-placed insurance policies to Wells Fargo Bank for the portfolio of loans it monitored which were paid for by Plaintiff and the Class at prices that were far higher than the market rates for policies that provide even more coverage.

83.     Defendants knew that the purchase of these policies would result in a financial windfall to themselves, to the detriment of Plaintiff and Class Members.

84.     As a result, Plaintiff and the Class have conferred a benefit on Defendants and Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

85.     Defendants will be unjustly enriched if they are allowed to retain the benefit, and each class member is entitled to an amount equal to the amount each class member enriched Defendants and for which Defendants have been unjustly enriched.

86.     Plaintiff and the Class do not seek to end Wells Fargo Bank's practice of placing

force-placed insurance on properties.  Plaintiff only seeks to ensure that the Defendants provide the same lawfully and in good faith and not at inflated and noncompetitive prices.

**WHEREFORE**, Plaintiff, on behalf of himself and similarly situated Class Members, demands an award against Defendants for the amounts equal to the amount each Class Member enriched Defendants and for which Defendants have been unjustly enriched, and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and all similarly situated individuals demand judgment against Defendants as follows:

(1)     Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2) or Rule(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the class;

(2)     Awarding damages sustained by Plaintiff and the Class as a result of Defendant's breach of the implied covenant of good faith and fair dealing, together with pre-judgment interest;

(3)     Finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiff and the Class, together with pre-judgment interest;

(4)     Awarding Plaintiff and the Class costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class's counsel and experts, and reimbursement of expenses; and

(5)     Such other and further relief the Court deems just and equitable.

CASE NO. 11-CV-81373-DMM

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class request a jury trial for any and all Counts for which a trial by jury

is permitted by law.

Respectfully submitted this 27th day of February, 2012.

By:  /s/ Adam M. Moskowitz_____

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Rachel Sullivan, Esq.<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>rn@kttlaw.com<br>**KOZYAK, TROPIN, &**<br>**THROCKMORTON P.A.**<br>2525 Ponce de Leon Blvd. 9th Floor<br>Coral Gables, FL33134<br>Telephone:  (305) 372-1800<br>Facsimile:    (305) 372-3508 | Lance A. Harke, Esq.<br>lharke@harkeclasby.com<br>Sarah Engel<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida33138<br>Telephone:      (305) 536-8220<br>Facsimile:       (305) 536-8229 |
| Jeffrey N. Golant, Esq.<br>jgolant@jeffreygolantlaw.com<br>**LAW OFFICES OF JEFFREY N.**<br>**GOLANT, P.A.**<br>1000 W. McNab Road, Suite 150<br>Pompano Beach, FL33069<br>Telephone: 954-942-5270<br>Facsimile: 954-942-5272 | Chip Merlin, Esq.<br>cmerlin@merlinlawgroup.com<br>Mary E. Fortson, Esq.<br>mfortson@merlinlawgroup.com<br>Sean M. Shaw, Esq.<br>sshaw@merlinlawgroup.com<br>**MERLIN LAW GROUP, P.A.**<br>777 S. Harbour Island Blvd., Suite 950<br>Tampa, FL33602<br>Telephone: 813-229-1000<br>Facsimile: 813-229-3692 |

CASE NO. 11-CV-81373-DMM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of February, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and served by the same means on the following:   David B. Esau, Esq., desau@carltonfields.com and Michael K. Winston, Esq., mwinston@carltonfields.com, Carlton Fields, PA, City Place Tower, 525 Okeechobee Blvd., Suite 1200, West Palm Beach, FL 33401.

<u>/s/ Adam M. Moskowitz</u>