**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 11-CV-81373-DMM**

MARK KUNZELMANN,
on behalf of himself and all others
similarly situated,

       Plaintiff,

v.

WELLS FARGO BANK, N.A. and
WELLS FARGO INSURANCE, INC.,

       Defendants.

_____/

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**
**AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………………1

FACTUAL BACKGROUND…………………………………………………………………………6

I.      PLAINTIFF SATISFIES THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23(a)……………..……………………………………………9

A.  The Class Is So Numerous That Joinder Would Be Impracticable……………………..10

B.  There Are Questions of Law and Fact Common to All Class Members……………… 10

C.  Plaintiff's Claims Are Typical of Those of the Class………………………………......12

D.  Plaintiff and Plaintiff's Counsel Are Adequate Representatives………………………..13

1.  Mr. Kunzelmann Does Not Have Interests Antagonistic to the Rest of the Class……....13

2.  Plaintiff's Counsel Are Qualified, Experienced, and Generally Able to Conduct the Proposed Litigation……………………………………………………………………...14

II.     PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(b)(3)……………15

A.  Common Questions of Law and Fact Predominate Because Legal and Factual Questions Will Be Resolved with Proof Common to Plaintiff and All Class Members..…………..15

B.  A Class Action Is Superior to Adjudication of Individual Claims……………………..16

C.  Applying Multistate Law Does Not Preclude a Finding of Predominance……………...18

CONCLUSION……………………………………………………………………………………20

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508

# TABLE OF AUTHORITIES

## Federal Cases

*Anderson v. Bank of S., N.A.*, 118 F.R.D. 136 (M.D. Fla. 1987)……………………..........10

*Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002)………13

*Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602 (S.D. Fla. 2003)……………………..9

*Cheney v. Cyberguard Corp.*, 213 F.R.D. 484 (S.D. Fla. 2003)…………………………… passim

*Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D.D.C. 2007)………………………………………18

*Comcast, Inc. v. Behrend*, 655 F.3d 182 (3d Cir. 2011)………………………………………12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156  (1974)…………………………………………18

*Fraser Yachts Fla., Inc. v. Milne*, No. 05-21168-CIV-JORDAN, 2007 WL 1113251 (S.D. Fla. Apr. 13, 2007)……………………………………………………………………………..7

*Griffin v. Carlin*, 755 F. 2d 1516 (11th Cir. 1985)………………………………………… 14

*Grossman v. First Pa. Corp.*, No. 89-9234, 1991 WL 222071 (E.D. Pa. Oct. 23, 1991)………..17

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009)………………………….. 19

*In re Abbott Labs. Norvir Antitrust Litig.*, Nos. C-04-1511 CW, C 04-4203 CW, 2007 WL 1689899 (N.D. Cal. Jun. 11, 2007)…………………………………………………………… 19

*In re Amerifirst Sec. Litig.*, 139 F.R.D. 423 (S.D. Fla. 1991)……………………………………  9

*In re Checking Overdraft Litig.*, MDL No. 2036, 2011 WL 3158998 (S.D. Fla. Jul. 25, 2011) …………………………………………………………………………………………passim

*In re Ins. Brokerage Antitrust Litig.*, No. 04-5184, 2009 WL 411877 (D.N.J. Feb. 17, 2009)….18

*In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009)………………18, 19

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004)………….passim

*Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010)…………………19, 20

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987)……………………………15

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004)…………………………………15, 17, 18

*Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594 (S.D. Fla. 1991)………………………………..13

*Moreno-Espinosa v. J&J AG Prods.*, 247 F.R.D. 686 (S.D. Fla. 2007)…………………………..9

*Powers v. Lycoming Engines*, 245 F.R.D. 226 (E.D. Pa. 2007) ……………………………..18, 20

*QBE Ins. Corp. v. Jorda Enters., Inc.*, No. 10-21107-CIV, 2012 WL 266431 (S.D. Fla. Jan. 30, 2012) ………………………………………………………………………………………7

*Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605 (D.S.D. 2004)………………………..19

*Simon v. Philip Morris Cos.*, 124 F. Supp. 2d 46 (E.D.N.Y. 2000) ………………………………18

*Singer v. AT&T Corp.*, 185 F.R.D. 681 (S.D. Fla. 1998) ………………………………………19

*Tefel v. Reno*, 972 F. Supp. 608 (S.D. Fla. 1997) ……………………………………………13, 14

*Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996)………………………………….. 10

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ………………………………………...10

*Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, 2011 WL 4901346, at *11 (S.D. Fla. Oct. 14, 2011)      ………………………………………………………………………..19

## Federal Rules

Fed. R. Civ. P. 23……………………………………………………………………passim

## Other Authorities

1 Newberg on Class Actions § 3.24 (1992)……………………………………………...…14

4 Newberg on Class Actions § 21.14 (1992) …………………………………………………17

## INTRODUCTION

This case will be the only avenue of recovery for hundreds of thousands of similarly situated consumers across the country who have been injured by Defendants Wells Fargo Bank, N.A. ("WFB") and Wells Fargo Insurance, Inc. ("WFI") (together "Wells Fargo"), as a result of the excessive kickbacks they collect by force-placing insurance. Defendants' practices have driven many of their customers into foreclosure, and have saddled others with excessive debt from which they may never find relief. Plaintiff's claims here raise **one main issue** that affects every WFB customer who was charged force-placed insurance ("FPI") premiums during the class period in an identical manner: Whether the law permits WFB and WFI to retain an 11% kickback from the total premiums charged to borrowers.[1] Because Assurant writes 80% of WFB's force-placed policies, these kickbacks have provided Wells Fargo with approximately $177 million in pure profit.

Amazingly—but only after this case was filed and after government and state regulators began investigating this issue—Wells Fargo has acknowledged that the 11% kickback is improper and has already agreed to stop charging the kickback to its borrowers beginning in December of this year. They have agreed, that is, to provide the exact relief Plaintiff seeks here retroactively on behalf of a nationwide class to all of its consumers moving forward.

WFB and WFI's corporate representatives have already admitted that (1) the 11% kickback that was charged to each class member never varied by homeowner, (2) WFI never worked on any individual homeowner's case file to earn any commission, and (3) each 11% charge was simply part of a "kickback structure" conceived by Norwest Bank and its sister company, Norwest Insurance, both later purchased by Wells Fargo, which continued the scheme. Rarely has any class action presented more predominant common issues.

The Honorable Robert Scola in *Williams v. Wells Fargo Bank, N.A.,* No. 11-cv-21233, recently certified a class of WFB borrowers with FPI policies that were issued by QBE (the insurer that issues the remaining 20% of WFB's FPI policies). *See* 2012 WL 566067, at *8 (S.D. Fla. Feb. 21, 2012). The force-placed scheme in *Williams* operates in precisely the same manner

---

[1] After merits discovery is completed, Plaintiff's expert may also provide evidence that other unearned expenses that were billed to all class members by Defendants were unjustly enriched. Plaintiff's expert can, and will, explain that these specific expenses can be calculated on a classwide basis and that there are no variations among individual homeowners. *See* Expert Report of Birny Birnbaum attached as **Exhibit A**.

as the scheme alleged here, but the damages that Plaintiffs seek to recover in *Williams* also include inflated loss ratios, as well as various illegal kickbacks and "commissions" beyond the 11% kickback paid to WFI.  Defendants asked the United States Court of Appeals for the Eleventh Circuit to consider reversing the *Williams* certification order, but the appellate court rejected Defendants' request for a Rule 23(f) appeal, and that case will proceed to trial later this year.

The jury in this case will have one key question to answer:  Was the commission paid to WFI that inflated every class member's premium by 11% permissible under state law?    In *Williams*, Judge Scola held as follows:

> The essence of this case, as alleged, is a common scheme to systematically, and without any individual consideration, force-place property insurance at an excessive rate to every person whose self-placed property insurance had lapsed.  The determination of the truth or falsity of the Plaintiffs' allegations that Wells Fargo and QBE engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* at *5.

Plaintiff's Motion for Class Certification is supported by the expert report of Birny Birnbaum.  Mr. Birnbaum is one of the foremost experts in the country on force-placed insurance and was recently appointed by the President of the United States to the Federal Insurance Counsel.  In his report, Mr. Birnbaum explains that the 11% kickback to WFI charged to every class member was unjustified because it was unearned—WFI did no work connected to the force-placed insurance scheme.    Wells Fargo challenged Mr. Birnbaum's analysis and conclusions in *Williams*, but Judge Scola found it to be "beyond peradventure that Birnbaum is qualified to give his expert opinions about the excessiveness of QBE's rates."  2012 WL 566067, at *3.  The court continued:

> Having considered the motion, the arguments, the record, and the relevant legal authorities, and having conducted a complete *Daubert* analysis, the Court finds that Birnbaum is qualified to proffer the testimony rendered in this case regarding the class-wide determination of whether the force-placed insurance premiums were excessive, and if so at what rates. The Court further finds that the methodologies proposed by Birnbaum are reliable and that Birnbaum's testimony will assist the trier of fact, through the application of technical and specialized expertise, to understand

the evidence and to determine facts in issue. The Defendants'
motion to exclude Birnbaum is denied.

*Id.* at *4.

This case raises issues that have occupied the national stage in recent weeks, largely as a result of class action lawsuits and hearings before the New York Department of Financial Services ("NYDFS") based on concerns that banks and insurers are colluding to charge inflated force-placed insurance premiums to the consumer.  Every lender's form mortgage agreement allows the lender to force place insurance to cover its risk in insuring the property, but none allows the bank to include kickbacks or unearned commissions in the premiums charged to the mortgagor.  The NYDFS will likely ban these exclusive relationships because according to their commissioner, "the perverse financial incentives that such financial arrangements may create would appear to harm both homeowners and investors while enriching the banks and the insurance companies."[2]  A recent article in the *Wall Street Journal* reported that force-placed insurance premiums have more than tripled since 2004, and that as little as 17 cents of every dollar of premiums paid is used to pay claims, leaving the remaining 83 cents as pure profit.[3]

Assurant kicks 11% of the premiums back to WFI regardless of the state in which a policy is placed or which insurance company is covering the risk.  WFI, in turn, passes a portion of the kickbacks to WFB in what they call "soft dollars."  These kickbacks are pure profit for the Wells Fargo entities—WFI does *nothing* to earn the 11% commission, nor does WFB. As a result, consumers have paid inflated premiums for WFB and WFI to line their pockets.

Plaintiffs respectfully move, pursuant to Federal Rule of Civil Procedure 23, for certification of a nationwide class on its unjust enrichment claim against both Defendants, defined as follows:

<u>Nationwide Class</u>:

> All borrowers who had mortgages with and/or serviced by Wells Fargo Bank, on properties located within the United States, who were charged premiums for force-placed insurance policies issued by Assurant or any of its affiliates within the applicable statutes of limitation through December 20, 2011 ("the Class Period"), unless

---

[2] Insurers Hit on Force-Placed Practices, *American Banker*, May 18, 2012, attached as **Exhibit B**.

[3] NY Hearings on 'Forced' Insurance in Foreclosure, *Wall Street Journal*, May 17, 2012, attached as **Exhibit C**.

(1) the lender has obtained a foreclosure judgment against the borrower; (2) the borrower has entered into a short-sale agreement with the lender; (3) the borrower has granted a deed in lieu of foreclosure to the lender; (4) the borrower has entered into a loan modification agreement with the lender; (5) the borrower has filed a claim for damages which has been paid in full or in part by Assurant; or (6) the charge to the borrower for force-placed insurance was cancelled in full.

Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, and borrowers who had force-placed policies only on their New York properties.[4]

Plaintiff also moves the Court to certify a Florida-only class bringing an implied covenant of good faith and fair dealing claim against WFB, to be defined as follows:

<u>Florida Subclass:</u>

All borrowers who had mortgages with and/or serviced by Wells Fargo Bank, on properties located within the State of Florida, who were charged premiums for force-placed insurance policies issued by Assurant or any of its affiliates within the applicable statutes of limitation through December 20, 2011 ("the Class Period"), unless (1) the lender has obtained a foreclosure judgment against the borrower; (2) the borrower has entered into a short-sale agreement with the lender; (3) the borrower has granted a deed in lieu of foreclosure to the lender; (4) the borrower has entered into a loan modification agreement with the lender; (5) the borrower has filed a claim for damages which has been paid in full or in part by Assurant; or (6) the charge to the borrower for force-placed insurance was cancelled in full.

Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.[5]

Plaintiff satisfies the numerosity requirement set forth in Rule 23(a)(1) because both proposed classes are composed of tens of thousands of WFB mortgagors who have had insurance

---

[4] WFB was not allowed to collect the 11% commission on force-placed policies for properties located in New York State.

[5] This was the same implied covenant class certified by Judge Scola in *Williams,* 2012 WL 566067, at *9.

with inflated premiums force-placed on their homes.  These mortgagors reside in all fifty states; joinder of all proposed class members would therefore be impracticable.

Numerous questions of law and fact are common to all class members.  Defendants engaged in a common scheme that they implemented uniformly and consistently across the proposed class.  WFI collects its "commission" at the same eleven percent rate nationwide, regardless of the state in which the policy is placed or the insurer that writes the policy. Moreover, WFI's commission is *never* earned—it is pure profit for WFI (and subsequently for WFB) regardless of the risk being insured.  As a result, questions regarding the practices and procedures by which Defendants implemented their force-placed insurance scheme will be common to all class members and Rule 23(a)(2) is satisfied.

Rule 23(a)(3)'s typicality requirement is also met here.  Plaintiff's claims are typical of the claims of the proposed class because the claims of each class member, including the named Plaintiff, arise from the same course of conduct by Defendants and are based on the same legal theories as those brought on behalf of the proposed class.  Defendants charged each class member for force-placed insurance with inflated premiums and kickbacks and commissions were systematically taken from all of those premiums at uniform rates across the country.

Adequacy of representation under Rule 23(a)(4) is fulfilled because Plaintiff does not have interests that conflict with the class and Plaintiff's counsel are highly qualified to represent the proposed class and will diligently prosecute the class claims.

Plaintiff is also entitled to certification under Rule 23(b)(3), which requires that common issues of law or fact predominate over individual issues and that class treatment is superior to other methods of adjudication.  Plaintiff will show that the force-placed insurance provision in WFB's mortgage agreements did not vary materially across the class; the 11% commission was uniformly applied; all premiums were set in the same manner; each class member was notified that insurance was being placed on his or her property in precisely the same manner; WFI and Assurant collected commissions from the scheme at a uniform rate across the class; and Assurant never writes insurance for individual borrowers, but instead issues a "master policy" that provides continuous coverage for all loans held by WFB.  As a result, other than the amount of coverage, no individual characteristics of the borrower or property are ever considered in the force-placement of insurance.

A class action is superior to other methods of adjudication because the claims of individual class members are too small to litigate on an individual basis against WFB and WFI, both sophisticated corporate defendants. If the class is not certified, tens of thousands of consumers may lose the opportunity to seek redress for their injuries. Variances in the fifty states' articulations of the law of unjust enrichment do not preclude a finding of predominance. Moreover, this litigation is already well underway and the Court has considered and become familiar with the key issues. Forcing individual mortgagors to begin again would not serve the interests of this Court or the proposed class. Finally, Plaintiff does not anticipate that manageability problems will arise in this litigation.

The resolution of the issues that arise from Plaintiff's claims will be the same for all Wells Fargo borrowers nationwide. There is therefore no doubt that a class action is the most appropriate and efficient method of adjudication to address and resolve these important issues.

## FACTUAL BACKGROUND

A.      **The Force-Placed Scheme.**

Defendants' force-placed insurance scheme operates uniformly across the proposed class regardless of the state in which a mortgagor resides. All WFB mortgage agreements include a force-placed insurance provision that is materially the same for borrowers nationwide. (*See, e.g.,* Kunzelmann mortgage, attached as **Exhibit D**). It provides that should a mortgagor's voluntary property insurance lapse, WFB may force-place insurance on the mortgagor's property at the mortgagor's expense to cover its own risk and charge the mortgagor the full cost of the premium. (*See id.* ¶ 5). WFB, in fact, purchases force-placed policies from its two contracted insurers, QBE and Assurant, and charges borrowers exorbitant premiums that are artificially inflated to cover more than its own risk. (Ex. A at 12, 25-26). In fact, the premiums are adjusted to cover kickbacks or "commissions" to participants in the force-placed scheme and administrative costs that are not disclosed to the borrower anywhere in the WFB mortgage agreement. (*Id.* at 25-26). WFI collects an eleven percent commission from the insurers on every premium charged to WFB mortgagors nationwide.[6]   (April 11, 2012 Deposition of David Franske ("4/11/12 Franske

---

[6] Plaintiff's counsel has deposed two Wells Fargo employees in their capacity as corporate representatives, and asked both to give an opinion, on behalf of Wells Fargo, as to the reasonableness of the 11 percent commission collected by WFI. Both corporate representatives declined to offer an opinion. (*See* Ex. I at 32:18-24, 33:11-13, 48:3-7, 50:19-24, 51:10-21, 180:1-20; Exhibit E at 59:7-14, 61:15-25). Witnesses deposed pursuant to Federal Rule of Civil

Dep."), attached as **Exhibit E**, at 15:17-21).   WFI, however, does nothing to earn its "commission." (D.E. 37 ¶ 5).  It simply collects a percentage of the inflated premium as pure profit and passes a portion of its share to WFB.  (Franske Email, attached as **Exhibit F**).

Assurant provides force-placed coverage for WFB borrowers in all fifty states.  WFB purchases an umbrella or "master" policy from Assurant that covers approximately 80% of WFB's entire portfolio of mortgages.  (September 28, 2011 Deposition of David Franske ("9/28/11 Franske Dep."), attached as **Exhibit G,** at 40:7-10, 54:17-22).  Assurant monitors a portfolio of millions of WFB mortgages for lapses in borrowers' insurance.  (October 27, 2011 Deposition of Tamara Golden ("Golden Dep."), attached as **Exhibit H**, at 87:20-21).

When a voluntary policy lapses, the insurer's system generates a cycle of three form letters to notify the insured that his or her policy has lapsed and provides information about the new force-placed policy.  (Ex. H at 44:7-45:11).  The insurer prints the letters on WFB letterhead with contact information that purports to connect the borrower to a WFB representative, but actually belongs to the insurer.  (Deposition of Michael Northagen, attached as **Exhibit I**, at 34:24-36:6).  WFB pre-approves the letters, all of which are identical save for the name, address, and account information of the individual borrower.  (*Id.* at 34:10-20).   Once force-placed coverage is in place, inflated insurance premiums are either added to the balance of the borrower's mortgage loan or deducted from his or her escrow account.  (Ex. G at 72:8-13; Ex. I at 83:3-84:8).  The borrower is not notified that the premiums cover unearned commissions to Wells Fargo.

### B.    Plaintiff Mark Kunzelmann.

Plaintiff Mark Kunzelmann obtained his mortgage loan through Wachovia Bank, and it was subsequently assumed by WFB. (D.E. 37 ¶ 41).  Mr. Kunzelmann's mortgage was in a portfolio monitored by Assurant.  (*Id.* ¶ 47).  From the time he executed his mortgage agreement until February 23, 2010, Mr. Kunzelmann maintained voluntary insurance on his property.  (*Id.* ¶ 42).  The annual premium for his homeowner's insurance was approximately ***$2,000.***  (*Id.*).  On

---

Procedure 30(b)(6) have an affirmative obligation to offer both factual information *and* the opinions of the corporation.  *See QBE Ins. Corp. v. Jorda Enters., Inc.*, No. 10-21107-CIV, 2012 WL 266431, at *11 (S.D. Fla. Jan. 30, 2012) (citation omitted).  Wells Fargo's failure to offer an opinion should bind Defendants at trial.  *See, e.g., id.* at *12 ("the lack of knowledge answer is itself an answer which will bind the corporation at trial") (citing *Fraser Yachts Fla., Inc. v. Milne*, No. 05-21168-CIV-JORDAN, 2007 WL 1113251, at *3 (S.D. Fla. Apr. 13, 2007)).

February 23, 2010, due to an inadvertent oversight, Mr. Kunzelmann accidently allowed his voluntary insurance to lapse but his insurer did not notify either him or his insurance agent of the lapse in coverage.  (*Id.* ¶ 43).  WFB admitted that their internal computer records also showed that Mr. Kunzelmann had existing coverage over his subject property.  (Ex. I at 97:18-23).

Mr. Kunzelmann refinanced his mortgage with WFB in January 2011.  (*Id.* ¶ 44).   WFB did not ask Mr. Kunzelmann for proof of insurance, nor did it inform him that his voluntary policy had lapsed because its records also indicated this his coverage was current.  (*Id.* ¶ 45).  On June 29, 2011, Mr. Kunzelmann received a letter on WFB letterhead (actually sent by Assurant and not by WFB) notifying him that his insurance had lapsed.  (*Id.* ¶ 46).  Two weeks later, Mr. Kunzelmann received a second letter informing him that WFB (again sent by Assurant) had secured a force-placed policy for his property through ASIC, an Assurant affiliate.  (*Id.* ¶ 47).  The insurance binder that accompanied the letter showed that the policy retroactively covered Mr. Kunzelmann's property for the period from January 31, 2011 through April 1, 2011.  (*Id.*).  The annual premium for the coverage was **$18,522.04**.  (*Id.*).

Mr. Kunzelmann immediately purchased a new voluntary policy through his own insurer on August 25, 2011.  (*Id.* ¶ 52).  The annual premium for the policy was $2,535, seven times less than the force-placed premium charged by WFB.  (*Id.*).  One week later, Mr. Kunzelmann received a third notice from WFB informing him that it had purchased a policy for his property through ASIC and would be deducting force-placed premiums from his escrow account.  (*Id.* ¶ 53).  The policy period ran from January 31, 2011 through January 31, 2012 and carried an $18,522.04 annual premium.  (*Id.*).  When Mr. Kunzelmann contacted customer service to explain that he had already secured voluntary insurance for his property, an Assurant representative assured him that the ASIC policy would be canceled and he would not be charged a force-placed premium.  (*Id.* ¶ 54).  His October 2011 escrow account statement, however, disclosed that his account had been debited $10,525.00 for the force-placed policy. (*Id.*).  This amount was never credited back to Mr. Kunzelmann's account.  (*Id.* ¶ 55).

### C.  Procedural Background

Plaintiff filed his Amended Complaint on February 27, 2012. (D.E. 37).  Defendants moved to dismiss the Amended Complaint, (D.E. 38), and their motion to dismiss is currently pending before this Court.  Wells Fargo raised many of the same arguments in response to the motion to dismiss as they had raised in their response in *Williams v. Wells Fargo Bank, N.A.*, 11-

21233 (S.D. Fla.).  Those arguments were rejected by the Honorable Judge Cecilia Altonaga.  *See Williams,* 09-cv-21233 (D.E. 76, 93, 103).  This Court amended the Pretrial Order on May 10, 2012 requiring Plaintiff to file this Motion by June 1, 2012.  (D.E. 60).

## LEGAL ARGUMENT

### I.      PLAINTIFF SATISFIES THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23(a).

"It is well established that class actions are a particularly appropriate and desirable means of redressing common claims for uniform legal violations that affect large numbers of persons in the same way." *Brown v. SCI Funeral Servs. of Fla., Inc.,* 212 F.R.D. 602, 603 (S.D. Fla. 2003).  Consumer class actions are especially well-suited for class action treatment.  *See, e.g., In re Checking Overdraft Litig.,* MDL No. 2036, 2011 WL 3158998 (S.D. Fla. Jul. 25, 2011) (certifying class of consumers with claims relating to bank overdraft fees); *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672 (S.D. Fla. 2004) (certifying a nationwide class of consumers with claims arising from sales of hypertension drug).

Federal district courts have broad discretion in deciding a motion for class certification. *Moreno-Espinosa v. J&J AG Prods.,* 247 F.R.D. 686, 687-88 (S.D. Fla. 2007).  "In reviewing a motion for class certification, the court is generally bound to take the substantive allegations of the complaint as true." *Checking Overdraft Litig.,* 2011 WL 3158998, at *2.  However, the court may look beyond the pleadings to determine whether the Rule 23 requirements have been met. *Id.*  "In determining whether the named plaintiffs have met their burden under Rule 23, the Court shall not consider the merits of the Plaintiffs' claims." *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484, 489 (S.D. Fla. 2003).  "The interests of justice require that in a doubtful case … any error, if there is to be one[,] should be committed in favor of allowing a class action." *Id.* (quoting *In re Amerifirst Sec. Litig.,* 139 F.R.D. 423, 427 (S.D. Fla. 1991)).

Rule 23(a) sets forth four prerequisites for class certification:  numerosity, commonality, typicality, and adequacy of representation. *Cheney,* 213 F.R.D. at 489; *see* Fed. R. Civ. P. 23(a).  The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).  Plaintiff satisfies all four requirements as set forth below.

### A.     The Class Is So Numerous That Joinder Would Be Impracticable.

Rule 23(a)(1) requires Plaintiff to show that the proposed class is so numerous that joinder of all members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). "While there is no fixed rule, generally a class size [of] less than twenty-one is in adequate, while a class size of more than forty is adequate." *Williams v. Wells Fargo Bank, N.A.*, 11-cv-21233, 2012 WL 566067, at *4 (S.D. Fla. Feb. 21, 2012) (citing *Cheney,* 213 F.R.D. at 489-90); *see, e.g., Anderson v. Bank of S., N.A.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987) ("[T]he size of the class and geographic location of the would-be class members are relevant to any consideration of practicality."); *Checking Overdraft Litig.,* 2011 WL 3158998, at *2.

The proposed number of class members in this case well exceeds the minimum threshold recognized by the Eleventh Circuit. *See Cox,* 784 F.2d at 1553. Plaintiff has defined the class to include all individuals who were charged for a force-placed insurance policy placed by WFB and Assurant. (D.E. 37 ¶ 58). Defendants sell and service millions of mortgage loans nationwide, and collect inflated premiums (and illegal "kickbacks") from WFB mortgagors in fifty states. Together, QBE and Assurant monitor approximately 9.5 million loans for WFB, (Ex. I at 23:5-11), with Assurant monitoring approximately 80 percent of that total. (Ex. H at 87:20-21). Assurant collected more than $283 million in force-placed premiums from WFB mortgagors in 2010 alone. (Ex. A at 11). The numerosity requirement is clearly satisfied here.

### B.     There Are Questions of Law and Fact Common to All Class Members.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high." *Cheney,* 213 F.R.D. at 490 (citation omitted). Commonality requires a showing that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *Checking Overdraft,* 2011 WL 3158998, at *4 (citation omitted); *see, e.g., Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 685-86 (commonality satisfied where defendant is alleged to have "engaged in a standardized course of conduct that affects all class members"); *Cheney,* 213 F.R.D. at 490 ("Where a common scheme is alleged, common questions of law or fact will exist.").

Plaintiff's claims here depend on the common contention that Defendants conceived and implemented a scheme to manipulate and artificially inflate force-placed insurance premiums that they would then charge to the borrower. (D.E. 37). All members of the putative class were injured in the same manner by this scheme, that is, they were charged WFI's eleven percent "commission," and as a result have paid or now owe amounts in excess of what their mortgage agreements allowed. (*Id.*); *see Williams,* 2012 WL 566067, at *5 (finding commonality to exist where plaintiffs had argued that "all members of the propose class were injured in the same manner, namely by being charged inflated premiums for the force-placed insurance).

Thus, while only one question of law *or* fact is required to establish commonality, several common questions that are capable of classwide resolution—or that will "generate common answers"—arise from Plaintiff's claims, including whether:

    a. Defendants overcharged borrowers for force-placed insurance policies that included improper (or unearned) commissions;

    b. The premiums collected from consumers included charges to which Wells Fargo was not entitled under the contracts at issue;

    c. Wells Fargo breached the implied covenant of good faith and fair dealing by entering into an exclusive arrangement with Assurant to place insurance policies on mortgagors' homes with artificially inflated premiums;

    d. WFI took unearned commissions or "kickbacks" from consumers through the alleged force-placed insurance scheme;

    e. WFI passed a portion of its "commission" to WFB in "soft dollars"; and

    f. Wells Fargo was unjustly enriched as a result of its policies and practices related to force-placed insurance.

No individualized inquiry will be required to answer these questions. For example, Defendants collected the same percentage commission from all policies regardless of location or local practice. (D.E. 37 ¶ 21). Resolution of this question on the merits will stand or fall on whether the scheme alleged, in fact, exists and, as a corollary, whether Defendants' uniform practice impacted all mortgagors. These common questions are capable of class-wide resolution. *Compare Checking Overdraft,* 275 F.R.D. at 673-74 (commonality requirement met based on common scheme). At this stage, the Court need only decide, based on whatever evidence is required, whether the question of Defendants' participation in a common scheme can be

answered with respect to the entire class.[7]  *See Comcast, Inc. v. Behrend,* 655 F.3d 182, 199 (3d Cir. 2011) (citation omitted) (at the certification stage, "a district court may inquire into the merits only insofar as it is 'necessary' to determine whether a class certification requirement is met"); *Terazosin Hydrochoride Antitrust Litig.,* 220 F.R.D. at 687 ("Where the complaint alleges that the Defendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met.").

Similarly, whether Defendants were unjustly enriched by the alleged common scheme does not involve individualized inquiry.  To certify the class, the Court need not ask whether Defendants were unjustly enriched by the premiums charged to one mortgagor as opposed to another.  Either Defendants took unearned profits from a force-placed scheme that was applied uniformly across the class or they did not.[8]  *See, e.g., Williams,* 2012 WL 566067, at *5 ( "The determination of the truth or falsity of the Plaintiffs' allegations that Wells Fargo and QBE engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke.").

These questions are more than sufficient to satisfy the commonality requirement imposed by Rule 23(a)(2).

### C.    Plaintiff's Claims Are Typical of Those of the Class.

Rule 23(a)(3) requires Plaintiff to demonstrate that his claims are typical of those held by the proposed class.  *See* Fed. R. Civ. P. 23(a)(3).  Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class.  *Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 686 n.23.   "Any atypicality or conflict between the named Plaintiffs' claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy." *Cheney,* 213 F.R.D. at 491.

---

[7] The same logic applies to Wells Fargo's contention that to resolve the questions of whether Defendants unreasonably inflated premiums or breached the implied covenant of good faith and fair dealing require inquiry into each borrower's specific circumstances.  (D.E. 144 at 13).

[8] Nor do variations in the law of unjust enrichment in the fifty states preclude the certification of the class. *See* Section II.C, *infra*; state law survey attached as **Exhibit J**.  Plaintiff's proposed Trial Plan is attached as **Exhibit N**.

Plaintiff's claims in this case arise from the same course of conduct and are based on the same legal theories as those brought on behalf of the proposed class. Plaintiff and every member of the proposed class took mortgage loans from WFB or its predecessors that were governed by common and materially uniform agreements. (D.E. 37 at ¶¶ 16, 17, 25-28, 41). As a result, once their voluntary policies lapsed, Plaintiff and every other member of the proposed class were charged artificially inflated force-placed insurance premiums by Defendants. (*Id*. at ¶¶ 1, 18-19, 21, 29, 53-54). Plaintiff and the class seek redress through common claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment against Defendants. (*Id*. at ¶¶ 72-79, 80-86). Thus, the claims of Plaintiff and those belonging to the putative class arise from the same course of conduct and are based on the same legal theories, thereby satisfying Rule 23(a)(3). *See, e.g., Williams*, 2012 WL 566067, at *6 (holding that the named plaintiffs were "typical of the class in that they were both charged and either paid or still owe Wells Fargo for the alleged excessive and inflated premiums for the force-placed property insurance").

### D.    Plaintiff and Plaintiff's Counsel Are Adequate Representatives.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney,* 213 F.R.D. at 495. "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 464 (S.D. Fla. 2002).

### 1.    Mr. Kunzelmann Does Not Have Interests Antagonistic to the Rest of the Class.

Adequacy exists where a class representative shares common interests with the class and seeks the same type of relief for himself as he does for other class members. *See Tefel v. Reno,* 972 F. Supp. 608, 617 (S.D. Fla. 1997) ("Where the named plaintiffs in a class action are seeking the same type of relief for themselves as they seek for class members, the adequacy of representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure is satisfied."); *Kreuzfeld A.G. v. Carnehammar,* 138 F.R.D. 594, 600 (S.D. Fla. 1991).

The named Plaintiff in this action has no interest that is antagonistic to those held by the rest of the class. The class definition includes only individuals who were subjects of Defendants' force-placed insurance scheme. (D.E. 37 at ¶ 58). All members of the class, including the named Plaintiff, had insurance policies placed on their homes and were charged inflated

premiums that were added to the balance of their mortgage loans. Thus, the critical issues in this case—the existence, implementation, and unlawfulness of Defendants' force-placed insurance scheme—are common to Plaintiff's claims and the claims of the class. None of the class members benefitted from Defendants' practice of overcharging for force-placed insurance; the class representatives and absent members would have been better served had the premiums imposed been competitive and unmanipulated by the Defendants. As Plaintiff proves his own claims, he will also be proving the claims of tens of thousands of class members. The Plaintiff and the proposed class members share a common goal: to recover the 11 percent kickback that was added to their insurance premiums. "If the Plaintiff[] succeed[s], the benefits will inure to all class members." *Tefel,* 972 F. Supp. at 617.

Plaintiff has participated in discovery and been actively involved in this litigation from the beginning. He has been deposed, knows what this case is about, and is willing and able to see this action to trial and beyond. Accordingly, Plaintiff has satisfied the requirements of Rule 23(a)(4). *See Williams,* 2012 WL 566067, at *6-7.

### 2. Plaintiff's Counsel Are Qualified, Experienced, and Generally Able to Conduct the Proposed Litigation.

The attorneys who seek to represent the plaintiff class in this case are highly qualified to serve as class counsel, and have served as lead and co-lead counsel in some of the largest class actions in the country as well as insurance related complex cases. There are four law firms representing Plaintiff in this action – Kozyak, Tropin, & Throckmorton, Harke Clasby & Bushman, The Merlin Law Group, and The Law Offices of Jeffrey Golant. Plaintiff seeks to appoint Kozyak, Tropin, & Throckmorton and Harke Clasby & Bushman as co-lead counsel. (*See* Plaintiff's Firms' Resumes, attached as **Exhibit K**). They have successfully prosecuted consumer class actions and their law firms are well respected in the communities that they serve. "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney." 1 NEWBERG ON CLASS ACTIONS 3d (1992) § 3.24 at 3-133 n. 353. *See also Griffin v. Carlin*, 755 F. 2d 1516, 1533 (11th Cir. 1985) (question of adequacy of plaintiffs most often "involve[s] questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class"). The firms representing Plaintiff have overseen the

litigation strategy, the briefing and argument of motions, including briefing and defeating Defendants' motions to dismiss, and the vigorous pursuit of discovery.

## II.   PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(b)(3).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of the subsections of Rule 23(b). *Cheney,* 213 F.R.D. at 489. Plaintiff here seeks certification under Rule 23(b)(3). Under Rule 23(b)(3), certification is appropriate if (1) common questions of law or fact predominate over questions affecting only individual class members and (2) class treatment is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3).  Each requirement is satisfied here.

### A.   Common Questions of Law and Fact Predominate Because Legal and Factual Questions Will Be Resolved with Proof Common to Plaintiff and All Class Members.

For common questions of law or fact to predominate over individualized questions, "the issues in the class action that are subject to generalized proof, and [are] thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof."  *Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 694 (citation omitted). "Common questions need only predominate; they need not be dispositive of the litigation." *Id.* (citation omitted).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Checking Overdraft Litig.,* 2011 WL 3158998, at *7 (citation omitted); *see, e.g., Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 725 (11th Cir. 1987).  The Eleventh Circuit has articulated the test for predominance as follows:

> [I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered … If … the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

*Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir. 2004).

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Defendants'] scheme to" manipulate force-placed insurance premiums charged to Plaintiff.  *Checking Overdraft Litig.,*

2011 WL 3158998, at *7 (citation and internal quotations omitted).  As a result, the evidence that Plaintiff will proffer to prove his claims arising from Defendants' force-placed insurance scheme is common to all class members.  Plaintiff's proof will be the same regardless of class size or composition; indeed, a finding of liability will require *no* proof regarding individual borrowers' properties or mortgage agreements with WFB.

The evidence that Plaintiff will offer will include testimony and documents showing, *inter alia*, that: (1) the terms and obligations of WFB's mortgage contracts relating to force-placed insurance were materially similar and uniform across the class; (2) WFB never purchases or writes insurance for an individual borrower, but instead, purchases a group Master Policy from each insurer that provides continuous coverage for all loans held by WFB and automatically provides insurance coverage in the event any borrower/loan in the portfolio fails to provide required evidence of required insurance, (Ex. G at 53:17-22); (3) the process by which Assurant (posing as WFB) notifies borrowers that insurance will be placed on their homes is fully automated, as is the process by the insurers determine the premium, (Deposition of Laurie Vanden Branden ("Vanden Branden Dep."), attached as **Exhibit L**, at  95:14-96:18; Composite form letters and policies, attached as **Exhibit M**); and (5) WFI collects a commission from Assurant as part of the insurers' agreement with Wells Fargo, not for any work done by WFI in connection with Defendants' force-placed scheme, (D.E. 37 ¶ 5).

Damages are readily calculable on class-wide basis and susceptible to common proof as well.  It is undisputed that each class member's insurance premiums were inflated by 11% to pay "commissions" to WFI.  The calculation of damages to the class here is straightforward—Plaintiff seeks to recover that eleven percent kickback across the class.  This amount will be easily ascertainable once Plaintiff learns through discovery the total amount of the force-placed premiums collected by Wells Fargo during the class period.

**B.     A Class Action Is Superior to Adjudication of Individual Claims.**

Federal district courts analyzing the superiority requirement of Rule 23(b) consider four factors to identify the superior method of adjudication: (1) the interest of individual class members in controlling the prosecution and defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against any members of the class; (3) the desirability of undesirability of concentrating litigation of the claims in the

particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3).  Plaintiff and the proposed class satisfy these requirements.

There is nothing to suggest that individual class members would have any interest in prosecuting separate actions against Wells Fargo.

> Since the damage amounts allegedly owed to each individual defendant are relatively low—especially as compared to the costs of prosecuting the types of claims in this case involving complex, multi-level business transactions between sophisticated Defendants—the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits.

*Williams*, 2012 WL 566067, at *9; *see* 4 NEWBERG ON CLASS ACTIONS § 21.14 (1992) (individuals only have an interest in prosecuting individual claims that are large enough to justify expending attorneys' fees and litigation costs).  *See, e.g., Grossman v. First Pa. Corp.,* No. 89-9234, 1991 WL 222071 at *7 (E.D. Pa. Oct. 23, 1991).  Thus, if this matter is not certified, there will likely be no recourse for thousands of homeowners and Defendants' improper practices would continue unabated.

The second superiority factor also favors class certification.  To the best of Plaintiff's knowledge, *Williams* is the only class action litigation against these defendants concerning the same controversy.  The class in *Williams* is a limited, Florida-only class and includes only WFB borrowers whose mortgages were monitored by QBE.  Because this case involves only WFB-Assurant mortgagors, there will be no overlap between the classes here and in *Williams.*

Litigating Plaintiff's claims in this forum will serve judicial economy and the convenience of the parties, thus satisfying the third superiority requirement.  The Eleventh Circuit recognizes that where, as here, a plaintiff establishes that common issues predominate over individualized issues, the claims of multiple parties should be litigated together in a single forum.  *Klay,* 382 F.3d at 1270.  This consideration carries particular weight where, as here, "the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings."  *Id.*  Moreover, "it is desirable to concentrate claims in a particular forum when that forum has already handled several preliminary matters."  *Id.* at 1271.  The parties have conducted significant discovery, including depositions of Defendants' corporate representatives and Plaintiff Mark Kunzelmann.  The significant effort expended by all involved weighs strongly

in favor of certification.  *See, e.g., Klay,* 382 F.3d at 1271 ("it is impossible to overlook the significant efforts that have already been put into these proceedings"); *In re Ins. Brokerage Antitrust Litig.*, No. 04-5184, 2009 WL 411877 (D.N.J. Feb. 17, 2009) (certifying class and approving settlement where considerable discovery had already been conducted in forum).

The fourth superiority factor focuses on "practical problems that may render the class action format inappropriate for a particular lawsuit[,]" or manageability.  *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164 (1974).  Litigation in this particular forum will not present manageability problems more significant than those that would arise from tens of thousands of individual actions.  Plaintiff does not foresee manageability problems of any significance, and certainly not any that would render a class action inferior to the litigation of proposed class members' claims in individual actions.  Plaintiff has already demonstrated that this case can proceed efficiently, moving from the initial pleading to class certification in only seven months.

### C.    Applying Multistate Law Does Not Preclude a Finding of Predominance.

A plaintiff seeking to certify a multistate class bears the burden of showing the court that there are no material variations among the laws of the multiple states for which certification is sought.   *Klay*, 382 F.3d at 1262.  "[T]he existence of minor differences in state law does not preclude the certification of nationwide classes."  *Cohen v. Chilcott*, 522 F. Supp. 105, 116 (D.D.C. 2007) (citation omitted).  The court need not find complete uniformity of state law, only that there are no material conflicts among the various states' laws such that they may be separated into a small number of subgroups.  *See, e.g., Prudential,* 962 F. Supp. at 525; *Simon v. Philip Morris Cos.,* 124 F. Supp. 2d 46, 77 (E.D.N.Y. 2000).  The state law survey attached as Exhibit J demonstrate that variations in the fifty states' articulations of the law of unjust enrichment are materially identical for the states that are included in this case.

"Courts have recognized that state claims of unjust enrichment are universally recognized causes of action that are materially the same throughout the United States." *Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 697 n.40 (citation and internal quotations omitted); *see, e.g., In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) ("[w]hile there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material"); *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007), *rev'd on other grounds*, 2009 WL 826842 (3d Cir. 2009) ("Although there are numerous permutations of the elements of the [unjust enrichment] cause of action in the

various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.") (emphasis in original); *Singer v. AT&T Corp.,* 185 F.R.D. 681 (S.D. Fla. 1998) (certifying nationwide class, noting that unjust enrichment is a "universally recognized cause[] of action" that is "materially the same throughout the United States").

Where, as here, plaintiffs can use common proof to measure the restitution to which members of a nationwide class would be entitled, common questions of law and fact will predominate over questions affecting class members individually.  *See, e.g., Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330, 341-42 (N.D. Cal. 2010) ("differences in state laws do not always outweigh the similarities, especially in cases concerning unjust enrichment claims"); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 568-69, 570 (E.D. Mich. 2009) (finding "few real differences" among various states' unjust enrichment laws and finding predominance satisfied where plaintiff alleged "systematic scheme to overcharge individuals for title insurance") (citation omitted); *In re Abbott Labs. Norvir Antitrust Litig.*, Nos. C-04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *8-9 (N.D. Cal. Jun. 11, 2007) (certifying nationwide class where "the variations among some States' unjust enrichment laws d[id] not significantly alter the central issue or the manner of proof").  In all fifty states, claims for unjust enrichment focus on the defendant, and whether it was unjustly enriched at the plaintiff's expense.  *See* Ex. A.; *see also Mercedes-Benz,* 257 F.R.D at 58 (citation omitted); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612-13 (D.S.D. 2004) ("In looking at claims for unjust enrichment, we must keep in mind that the very nature of such claims focuses on the gains of the defendants, not the losses of the plaintiffs.").  The focus on defendant is that much stronger when plaintiffs allege that defendant participated in a common scheme to take advantage of a class of consumers.  *See, e.g., Hoving,* 256 F.R.D. at 568-69; *cf. Williams,* No. 11-cv-21233, 2011 WL 4901346, at *11 (S.D. Fla. Oct. 14, 2011) (Altonaga, J.) (observing that plaintiffs' unjust enrichment claim "focuses on the manner in which Wells Fargo manipulated the force-placed insurance process").

The fifty states' articulations of the law of unjust enrichment are separated readily into three groups.  *See* Ex. J.  The elements of an unjust enrichment claim in two of these groups of states is substantially the same—one group requires a plaintiff to show only that it conferred a benefit on the defendant that was unjustly retained, while the second articulates the claim so as to require plaintiff to show a causal connection between its impoverishment and the defendant's

enrichment and the absence of a remedy at law.  *See id.*  The third group of states adds to this the element of knowledge; a plaintiff, that is, must show that the defendant knowingly received the benefit by which it was unjustly enriched.[9]  *See id.*  Where, as here, a plaintiff has alleged this "extra" element, the court may certify a nationwide class because the plaintiff is bound to offer proof of all lesser included elements of the claim.  *See, e.g., Terazosin Hydrochloride Antitrust Litig,* 220 F.R.D. at 697 n.40 ("Because Indirect Purchaser Plaintiffs have indicated that they will present common evidence establishing this additional "appreciation" element, the absence of such a requirement under the Restatement (and the law of the states that follow it) presents no obstacle to class certification."); *Powers,* 245 F.R.D. at 231 (the "[knowledge] element is not at issue where the defendant failed to disclose a known defect because it had to have known it was getting a benefit").

Plaintiff has alleged an intentional scheme to artificially inflate force-placed premiums. (D.E. 37 ¶¶ 18, 21, 23, 29).  He alleges that Wells Fargo selected insurers to participate in the scheme and forged exclusive relationships with them that propelled the scheme forward and maximized profits for all participants.  (*Id.* ¶¶ 17, 20, 23, 24).  To support these allegations at trial, Plaintiff must prove every element of unjust enrichment in all fifty states.  *See* Ex. A.  For this reason, the "idiosyncratic differences" among the fifty states' unjust enrichment laws "are not sufficiently substantive to predominate over the shared claims." *Keilholtz,* 268 F.R.D. at 342.

Plaintiff seeks to certify an implied covenant of good faith and fair dealing class in Florida only, exactly as Judge Scola did several months ago in *Williams.*  2012 WL 566067, at *8-9.  There are, therefore, no variances in state law to impede class certification.

<u>CONCLUSION</u>

**WHEREFORE,** Plaintiff respectfully requests the Court certify the proposed class.

---

[9]   In twenty states, a plaintiff need only prove that the defendant was enriched at the plaintiff's expense and it would be unjust for the defendant to retain the benefit without paying for it. *See* Ex. J at 1 (showing that the laws of twenty states require showing that plaintiff conferred a benefit on defendant and defendant was unjustly enriched thereby).  Four other states (Arizona, Delaware, Louisiana, and North Dakota) break an unjust enrichment claim down into five separate elements, but the thrust of the cause of action in the same; a plaintiff must show that (1) the defendant was enriched; (2) the plaintiff was impoverished; (3) a connection exists between the impoverishment and the enrichment; (4) the defendant's enrichment was unjust; and (5) there is no legal remedy provided by law. *See id.* at 9.  An additional twenty-seven states, including Florida, add an additional element, requiring a plaintiff to show that the defendant knew of or "appreciated" the benefit it received.  *See id.* at 4.

Respectfully submitted,

/s/ Adam M. Moskowitz

Adam M. Moskowitz, Esq.
amm@kttlaw.com
Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Rachel Sullivan, Esq.
rs@kttlaw.com
Robert J. Neary, Esq.
rn@kttlaw.com
**KOZYAK, TROPIN, &**
**THROCKMORTON P.A.**
2525 Ponce de Leon Blvd. 9th Floor
Coral Gables, FL 33134
Telephone: 305-372-1800
Facsimile: 305-372-3508
*Counsel for Plaintiffs*

Lance A. Harke, Esq.
lharke@harkeclasby.com
Sarah Engle, Esq.
sengle@harkeclasby.com
Howard M. Bushman, Esq.
hbushman@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone: 305-536-8220
Facsimile: 305-536-8229
*Counsel for Plaintiffs*

Jeffrey N. Golant, Esq.
jgolant@jeffreygolantlaw.com
**LAW OFFICES OF JEFFREY N.**
**GOLANT, P.A.**
1000 W. McNab Road, Suite 150
Pompano Beach, FL 33069
Telephone: 954-942-5270
Facsimile: 954-942-5272
*Counsel for Plaintiffs*

Chip Merlin, Esq.
cmerlin@merlinlawgroup.com
Mary E. Fortson, Esq.
mfortson@merlinlawgroup.com
Sean M. Shaw, Esq.
sshaw@merlinlawgroup.com
**MERLIN LAW GROUP, P.A.**
777 S. Harbour Island Blvd., Suite 950
Tampa, FL 33602
Telephone: 813-229-1000
Facsimile: 813-229-3692
*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on the 1st day of June, 2012 and served by the same means on the following:  David B. Esau, Esq., desau@carltonfields.com,  Michael  K.  Winston,  Esq.,  mwinston@carltonfields.com,  Carlton Fields, PA, City Place Tower, 525 Okeechobee Blvd., Suite 1200, West Palm Beach, FL 33401.

By:  /s/ Adam M. Moskowitz