UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CV-81373-DMM

MARK KUNZELMANN;
on behalf of himself and all others
similarly situated;

       Plaintiff,

v.

WELLS FARGO BANK, N.A. and
WELLS FARGO INSURANCE, INC.

       Defendants.
_____/

**PLAINTIFF'S MOTION TO DISMISS OR STRIKE DEFENDANTS'
COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Mark Kunzelmann, on behalf of himself and all others similarly situated, hereby moves to dismiss or strike Defendant Wells Fargo Bank N.A.'s ("WFB") counterclaims and to strike thirty-one of WFB and Wells Fargo Insurance, Inc.'s ("WFI")[1] fifty-seven affirmative defenses, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(f), and states as follows:

## INTRODUCTION

The two "conditional counterclaims" and fifty-seven affirmative defenses alleged by Defendants (D.E. 66) are a transparent attempt to delay this litigation and preemptively cloud this Court's certification analysis of Plaintiff's class claims. The Court should (1) dismiss WFB's second counterclaim for breach of contract because WFB has not alleged a material breach; (2) dismiss both counterclaims because they are permissive and there is no independent basis for the exercise of federal subject-matter jurisdiction over them; and (3) strike at least thirty-one of Defendants' fifty-seven affirmative defenses.

WFB fails to state a claim for breach of contract with its second conditional counterclaim because it has not alleged a material breach of its standard form mortgage agreement. WFB

---

[1] Plaintiff will refer to WFB and WFI together as "Defendants" or "Wells Fargo."

contends that Plaintiff and the putative class breached their mortgage agreements by allowing their voluntary insurance policies to lapse, but the agreement does not excuse WFB from future performance in the event of a lapse. To the contrary, the agreement grants WFB the *additional right* to force place a policy in the event of a lapse in insurance to cover the newly exposed risk. Moreover, the damages that WFB seeks for the alleged breach—force-placed premiums that were charged but have not yet been paid—are properly sought through individual foreclosure proceedings which WFB may pursue against any borrower who defaults on his or her mortgage loan.

Both of WFB's conditional counterclaims are permissive on their face because WFB raises them against absent and unidentified class members who are not "opposing parties" for purposes of Federal Rule of Civil Procedure 13(a). The first conditional counterclaim, for deficiency judgments against absent class members, is also permissive because it bears no logical relationship to Plaintiff's claims against Wells Fargo. The counterclaim does not arise from the same "transaction or occurrence" as Plaintiff's claims and will require different elements of proof after certification. Plaintiff's claims arise from a force-placed insurance scheme that Wells Fargo implemented uniformly across many states. The deficiency judgments counterclaim arises from judgments of foreclosure allegedly entered against individual class members in state courts. The alleged deficiency judgments have no bearing on whether (or by how much) Defendants overcharged the putative class for force-placed insurance.

Because WFB's conditional counterclaims are permissive, the Court must have an independent basis to exercise jurisdiction over each of them. No such basis for jurisdiction exists. There is no federal question at stake—WFB alleges only that individual class members may have breached their mortgage agreements and/or owe WFB the difference between what they owed on their mortgages and what WFB was able to recover in foreclosure sales. WFB does not allege diversity between the counter-parties or that the amounts in controversy would satisfy the federal jurisdictional minimum. As such, there is no basis for this Court to exercise jurisdiction over the counterclaims and both should be dismissed.

In the alternative, the Court should exercise its discretion to dismiss or strike WFB's counterclaims in keeping with the purpose of Federal Rule of Civil Procedure 13. Rule 13 was designed to prevent multiplicity of actions and to promote judicial economy by using one lawsuit to resolve all logically related disputes. The counterclaims alleged by WFB, however, would

interject new issues and elements of proof into this lawsuit that would only complicate these proceedings.

Finally, the Court should strike at least thirty-one of Wells Fargo's fifty-seven affirmative defenses. This Court has already rejected three of the affirmative defenses in its order on Defendants' Motion to Dismiss. Five are legally insufficient on their face, and nineteen more are not affirmative defenses at all, but denials or allegations of defects in certain aspects of Plaintiff's claims. Wells Fargo's statute of limitations defense is invalid on its face because mortgagors whose claims would have been subject to a statute of limitations defense are carved out of Plaintiff's defined class. Finally, at least five of Defendants' affirmative defenses should be stricken because they are unsupported by ultimate facts, and therefore violate Federal Rule of Civil Procedure 8(a).

## BACKGROUND

Plaintiff initiated this action on December 20, 2011, alleging that Wells Fargo orchestrated a scheme to force place insurance policies on mortgagors' homes at premiums that had not been calculated in good faith and were artificially inflated far in excess of the market rate. (D.E. 1; *see also* D.E. 37). Plaintiff brings claims against Wells Fargo for breach of the implied covenant of good faith and fair dealing and unjust enrichment, seeking to recover damages for the inflated premiums charged him for force-placed insurance pursuant to his mortgage contracts, (D.E. 37), and both claims survived Wells Fargo's motion to dismiss them. (D.E. 38, 64).

Wells Fargo filed an Answer, Affirmative Defenses, and Conditional Counterclaims (the "Answer") on June 18, 2012. (D.E. 66). The Answer includes fifty-seven affirmative defenses and two "conditional counterclaims" against absent class members. (*Id.* at 7-24). Wells Fargo alleges in the two counterclaims that unnamed and as yet unidentified absent class members (1) owe deficiency amounts arising from judgments of foreclosure in various state courts and (2) breached their mortgage contracts by failing to maintain voluntary insurance policies on their properties. (*Id.* at 19 -24). Wells Fargo seeks payment of the deficiency amounts by the "deficiency counter-defendants" and payment of as yet unpaid force-placed insurance premiums by the "breach of contract counter-defendants." (*Id.*).

This Motion follows.

3

**ARGUMENT**

I. **WFB FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT AGAINST PLAINTIFF AND THE ABSENT CLASS MEMBERS.**

WFB alleges in its second conditional counterclaim that absent class members breached their mortgage agreements with WFB by allowing their voluntary property insurance policies to lapse, and that WFB is now entitled to recover unpaid premiums as damages arising from the alleged breaches. (D.E. 66 ¶¶ 21-31). These allegations, however, do not comprise a viable breach of contract claim. "An adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008) (citations omitted); *see, e.g., Fortunato v. Countrywide Home Loans, Inc.*, 2:12–CV–360 JCM, 2012 WL 2417724, at *3 (D. Nev. Jun. 26, 2012) (citation omitted) (requiring material breach); *One & Ken Valley Housing Grp. v. Maine State Housing Auth.*, No. No. 1:09–cv–00642–DBH, 2012 WL 1458202, at *14 (D. Me. 2012) (citations omitted) (same).

> To constitute a vital or material breach, a defendant's nonperformance of a contract must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part but a defendant's failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach.

*Atlanta Jet v. Liberty Aircraft Servs., LLC*, 866 So. 2d 148, 150 (Fla. 4th DCA 2004) (citation omitted); *see, e.g., In re Thomas*, 51 B.R. 653, 656 (M.D. Fla. 1985) (citation omitted) (material contractual breach "allows the non-breaching party to treat the breach as a discharge of his contract liability").

There is no material breach here because the putative class members' failure to maintain hazard insurance on their homes does not go to the essence of the agreements that govern their mortgage loans with WFB. If a borrower allows his or her voluntary insurance to lapse, WFB's obligations under the mortgage agreements continue—it is not automatically excused from further performance under any of the agreements' terms. To the contrary, if a borrower's insurance lapses, WFB's form mortgage agreement grants WFB the *additional right* to force-place insurance to cover its risk at the borrower's expense. (D.E. 38 at Ex. A ¶ 5). If the borrower subsequently fails to make his mortgage payments (which would include the cost of any force-placed premiums), then the appropriate remedy would be foreclosure, not damages

pursued through a claim for breach of contract.[2] The Court should dismiss WFB's breach of contract counterclaim with prejudice for failure to state a claim.

## II. THE COURT SHOULD DISMISS BOTH COUNTERCLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION.

Federal courts may exercise jurisdiction over state-law counterclaims only if they fall within the court's supplemental jurisdiction. *Zambrano v. Chic Marine of Lauderdale, Inc.*, No. 00-7632-CIV, 2001 WL 36178001, at *2 (S.D. Fla. Jun. 6, 2001). Rule 13(a) governs compulsory counterclaims and provides that "a pleading must state as a counterclaim any claim that … the pleader has against an opposing party if the claim …arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" Fed. R. Civ. P. 13(a). Accordingly, compulsory counterclaims are subject to the supplemental jurisdiction of the federal courts and do not require an independent basis for federal jurisdiction. *See Zambrano,* 2001 WL 36178001, at *2.

Counterclaims that are not compulsory are permissive counterclaims. *See* Fed. R. Civ. P. 13(b). Permissive counterclaims are "purely discretionary with the court," *Allapattah Servs.*, 333 F.3d at 1260 n.14 (citation omitted), and require a basis for federal jurisdiction independent of that asserted with respect to the plaintiff's claims. *Hutton v. Grumpie's Pizza & Subs, Inc.,* No. 07-81228-CIV, 2008 WL 1995091, at *2 (S.D. Fla. May 7, 2008); *Allapattah Servs., Inc. v. Exxon Corp.,* 157 F. Supp. 2d 1291, 1322 (S.D. Fla. Aug. 7, 2001); *Zambrano,* 2001 WL 36178001, at *3 (citation omitted); *see also Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic*

---

[2] WFB's proposed breach of contract counterclaim is in fact a repackaging of its argument, made in *Williams* and here, that some members of the putative class were charged for, but never paid, force-placed premiums and therefore will not recover monetary damages should Plaintiff and the class prevail. *See Williams v. Wells Fargo Bank, N.A.,* No. 11-cv-21233, 2012 WL 566067, at *6 (S.D. Fla. Feb. 21, 2012) ("The next conflict argued by Wells Fargo is class members who have not yet paid, but currently owe, Wells Fargo for the allegedly excessive insurance premiums."). These borrowers will, however, have their outstanding debts reduced. *See id.* ("these individuals, if the class action is successful, will simply be able to have their obligation reduced—they would not, as Wells Fargo suggests—be required to pay the premiums in order to recover damages in this litigation as a matter of law"). Resolution of individualized damages issues does not defeat certification and may be handled during the claims administration process. *See, e.g., Allapattah Servs., Inc.* v. *Exxon Corp.,* 333 F.3d 1248, 1261 (11th Cir. 2003) ("numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate"); *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 677 (S.D. Fla. 2011) ("The Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification.") (citations omitted).

*Express, Inc.,* 238 F. Supp. 2d 963, 968 (S.D. Ohio 2003). A defendant purporting to bring a permissive counterclaim based on state law must, therefore, plead facts sufficient to establish a basis for federal diversity or admiralty jurisdiction and an amount in controversy greater than $75,000. *See Zambrano,* 2001 WL 36178001, at *2; 12 U.S.C. § 1332.

The Court should dismiss WFB's conditional counterclaims for deficiency judgments and breach of contract for lack of subject matter jurisdiction because (A) counterclaims against absent class members are permissive; (B) WFB's counterclaim for deficiency judgments does not arise out of the same transaction or occurrence that is the subject matter of Plaintiff's claims; and (C) the Court does not have an independent basis for jurisdiction over WFB's conditional counterclaims.

**A. WFB's Counterclaims against Absent Class Members Are Not Compulsory.**

WFB alleges "conditional counterclaims" for deficiency judgments and breach of contract against "absent class members who will need to be joined in this action." (D.E. 66 at 19-24). "[Federal] Rule [of Civil Procedure] 13, however, is inapplicable in class action suits, because absent class members are not opposing or litigating adversaries for purposes of Rule 13." *Allapattah Servs.*, 333 F.3d at 1260 n.14 (11th Cir. 2003) (citing and quoting *Arctic Express,* 238 F. Supp. 2d at 967) (internal quotations omitted); *See also Owner–Operators Indep. Drivers Ass'n. v. Ledar Transport*, No. 00–0258–cv, 2004 WL 5376211, at *11 (W.D. Mo. Jan. 7, 2004); *In re Sugar Indus. Antitrust Litig.,* 73 F.R.D. 322, 349 (E.D. Pa. 1976); *Donson Stores, Inc. v. Am. Bakeries Co.*, 58 F.R.D. 458, 489 (S.D.N.Y. 1973). Counterclaims raised against absent class members, therefore, are permissive rather than compulsory. *See, e.g.,* Fed. R. Civ. P. 13(a) ("a pleading must state as a counterclaim any claim that … the pleader has *against an opposing party*….") (emphasis added); *see, e.g., Allapattah Servs.*, 333 F.3d at 1260 n.14 ("any counterclaims that may be permitted in a class action are not governed by Rule 13 and are *purely discretionary with the court*") (emphasis in original) (citing 2 Alba Conte & Herbert B. Newberg, 2 NEWBERG ON CLASS ACTIONS § 4:34 at 299-300) (4th ed. 2002)).[3]

---

[3] Section 4:34 of Newberg on Class Actions is particularly instructive on this issue. Newberg is clear that "strong reasons support a determination that Rule 13 governing counterclaims is inapplicable in class action suits based on the language of Rule 13 as well as its underlying policies." 2 NEWBERG ON CLASS ACTIONS § 4:34. The section then goes on to illustrate the practical, policy, and due process concerns that arise when class action defendants bring counterclaims against individual absent class members. *See id.*

This rule makes sense. "Because of the representative nature of class suits, absent class members are, in a very real sense, nonlitigating parties." 2 NEWBERG ON CLASS ACTIONS § 4:34. Allowing counterclaims against nonlitigating parties would not support any of the purposes behind Rule 13, which permits litigants to assert counterclaims to promote judicial economy, efficiency, and fairness to the parties. *See, e.g., Mueller v. Eckerd Corp.,* 184 F.R.D. 686, 688 (M.D. Fla. 1999) ("The purpose of Rule 13(a) is to achieve economy, fairness, and consistency by bringing 'logically related' suits together."). This is especially so where, as here, the counterclaims at issue are brought against class members individually, but not the named plaintiff and not the entire class. *See, e.g., Board of Educ. of Evanston Township High Sch. Dist. No. 202, Cook Cnty., Ill. v. Admiral Heating & Ventilation, Inc.*, 511 F. Supp. 343, 346 (N.D. Ill. 1981) (dismissing permissive claims against individual absent class members); 2 NEWBERG ON CLASS ACTIONS § 4:34.

Allowing litigants to bring counterclaims against absent, nonlitigating class members would also raise procedural due process concerns regarding personal jurisdiction, venue, and adequate notice. In non-class litigation, counter-defendants (who are also plaintiffs) are deemed to have waived objections to personal jurisdiction and venue by having chosen the forum in the first instance having submitted to the court's jurisdiction for the purpose of litigating their claims. 2 NEWBERG ON CLASS ACTIONS § 4:34. Counterclaims against absent class members, once filed, proceed without notice to the putative class, depriving each absent counter-defendant of the opportunity to choose or object to the forum, object to the court's jurisdiction over him or her, or otherwise direct his or her defense. *See id.*; *see, e.g., Franken v. Mukamal,* No. 11–10908, 2011 WL 4584767, at *2 (11th Cir. Oct. 5, 2011) ("Due process requires that a party have adequate notice of the consequences of the conduct for which he has been sanctioned."); *Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada,* No. 09–23248–CIV, 2011 WL 5057203, at *3 (S.D. Fla. Oct. 24, 2011) (exercise of personal jurisdiction over defendant must comport with due process).

### B. WFB's Conditional Counterclaim for Deficiency Judgments Is Also Permissive Because It Bears No Logical Relationship to Plaintiff's Claims Against WFB.

WFB' first counterclaim for deficiency judgments against the putative class is also permissive because it does not arise from the same transaction or occurrence as Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. *See* Fed. R. Civ. P. 13(a) (compulsory counterclaims are those that "the pleader has against an

7

opposing party if the claim …arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"). Counterclaims arise from the same transaction or occurrence as a plaintiff's claims in a proceeding when there is a "logical relationship" between the claims and counterclaims. *See Zambrano,* 2001 WL 36178001, at *2 (citations omitted). A logical relationship exists when "the same operative facts serve as the basis of both claims or the aggregate core of the facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id.* (quoting *Republic Health Corp. v. Lifemark Hosps., Inc.,* 755 F.2d 1453, 1455 (11th Cir. 1985)). "The purpose of Rule 13(a) is to achieve economy, fairness, and consistency by bringing 'logically related' suits together." *Mueller,* 184 F.R.D. at 688. The phrase "logical relationship" is given meaning by this purpose. *Admiral Heating*, 511 F. Supp. at 345 (citation omitted). "Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." *Id.*

WFB's counterclaim for deficiency judgments against unidentified absent class members does not arise from the same transaction or occurrence as Plaintiff's claims simply because both bear some relation to putative class members' mortgage loans with WFB. *See, e.g., Nayani v. Horseshoe Entm't,* No. 3:06-CV-01540-M, 2007 WL 1288047, at *3 (N.D. Tex. May 2, 2007) ("a claim that is only peripherally related to prior action is not a compulsory counterclaim"); *Miller v. Weitzer Panache Ltd.,* 751 F. Supp. 980, 984 (S.D. Fla. 1990) (title company's claim for overpayment of title fees and homeowner's RESPA claim arising from sale of same house did not arise from same transaction or occurrence). The operative facts that serve as the basis for Plaintiff's claims against Wells Fargo are separate and distinct from those underlying WFB's counterclaims against absent class members for deficiency judgments. Plaintiff's claims arise from the artificially inflated premiums that WFB charges homeowners for force-placed insurance policies as a matter of practice. (D.E. 37 ¶¶ 20-22, 78, 82). WFB's counterclaim for deficiency judgments, on the other hand, arises from foreclosure sales of individual mortgagors' homes. (D.E. 66 at 20-22).

As a result, each set of claims will require different elements of proof. *See, e.g., Zambrano,* 2001 WL 36178001, at *2 (defendant's counterclaim permissive where "[t]he elements of proof for [the] counterclaim will require evidence distinct from the evidence for [the] plaintiff's] … claims"). Plaintiff will prove his claims by offering evidence demonstrating,

among other things, that WFB implemented a uniform and nationwide force-placed insurance scheme by which they charged borrowers premiums at many times the market rate. (D.E. 37 at 20-35). Plaintiff will show that the premiums were artificially inflated to cover "kickbacks" to WFI and WFB's selected insurers. (*Id.* ¶¶ 21, 24, 26, 32). Because Defendants' scheme was uniform across the various states where it was implemented, (*id.* ¶ 28), Plaintiff will not require any individualized proof to establish liability.

WFB's first counterclaim, on the other hand, will involve analysis of the foreclosure proceedings on absent class members' homes, and ultimately the class members' entitlement to damages, and would run contrary to "achiev[ing] economy, fairness, and consistency" in keeping with the purpose of Rule 13(a). *See Mueller,* 184 F.R.D. at 688. Indeed, as one court observed:

> Interjection of defendants' counterclaims (of unknown number and complexity, but conceivably involving hundreds or thousands of contracts, each with its own unique factual claims and defenses involving wholly unrelated issues and proof) would substantially burden the progress of the litigation and proliferate its issues enormously, without correspondingly reducing the burden the parties would have to bear if the contract counterclaims were tried separately. Bringing the counterclaims under the umbrella of this litigation would have an intolerable impact on the Court's and the parties' ability to deal with its original claims an impact that itself demonstrates why the logical relationship test is not satisfied.

*Admiral Heating,* 511 F. Supp. at 346.

Because WFB's counterclaim for deficiency judgments is not logically related to Plaintiff's claims, the counterclaim is permissive and requires an independent basis for the exercise of this Court's jurisdiction. *See Hutton,* 2008 WL 1995091, at *2. As explained below, no jurisdictional basis exists, and the counterclaim should be dismissed.

### C. There Is No Independent Basis for This Court's Jurisdiction over WFB's Permissive Counterclaims.

"If a counterclaim is permissive rather than compulsory, the court must find an independent jurisdictional basis, such as federal question or diversity jurisdiction, for the counterclaim to proceed in federal court." *Id.* A party attempting to bring a permissive counterclaim must also allege an amount in controversy that meets or exceeds federal jurisdictional requirements. *See Zambrano,* 2001 WL 36178001, at *3.

WFB does not have an independent basis for federal jurisdiction here. It alleges only state law claims against absent class members, (D.E. 66 at 20-24), and therefore has not raised a

federal question. *See* 28 U.S.C. §1331. Moreover, WFB does not estimate how many absent class members might be subject to each counterclaim or identify one homeowner alleged to have breached his or her mortgage agreement or against whom a deficiency judgment might be entered. (D.E. 66). As a result, it is impossible to assess whether (1) there is diversity between Wells Fargo and *any* suggested counter-defendant or (2) the alleged counterclaims put amounts in controversy that are sufficient to meet the jurisdictional minimum. Because WFB's counterclaims are devoid of any allegations to assist with the appropriate jurisdictional analysis, the Court should dismiss both counterclaims for lack of subject-matter jurisdiction. *See, e.g., Hutton,* 2008 WL 1995091, a *2; *Zambrano*, 2001 WL 36178001, at *3.[4]

### III. THE COURT SHOULD STRIKE AND/OR DISMISS BOTH COUNTERCLAIMS TO PROMOTE JUDICIAL ECONOMY, FAIRNESS, AND CONSISTENCY.

Rule 13 was designed to maximize judicial economy and efficiency by consolidating all claims between the parties in one proceeding. *See, e.g., Southern Constr. Co. v. U.S. ex rel. Pickard,* 371 U.S. 57, 60, 83 S. Ct. 108, 110, 9 L. Ed. 2d 31, 34 (1962) (purpose of Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters"); *Mueller,* 184 F.R.D. at 688 ("[t]he purpose of Rule 13(a) is to achieve economy, fairness, and consistency by bringing 'logically related' suits together"); *Leon Tempelsman & Son v. TECC Corp.*, 107 F.R.D. 384, 385-86 (N.D. Tex. 1985) (purpose of Rule 13 is "conservation of judicial resources by joining all claims between parties in one lawsuit"). Federal district courts will decline to hear permissive counterclaims where, as here, allowing the counterclaims to proceed would complicate, rather than simplify, litigation of the first-filed claims before the court. *See, e.g., Tempelsman,* 107 F.R.D. at 386 (striking counterclaim that would "inject issues far removed from the original suit … fairness and convenience to the potential parties as well as the Court's concern over managing its own docket weigh heavily in support of dismissal"); *Admiral Heating,* 511 F. Supp at 346 n.6 ("court could in its discretion dismiss the counterclaims without prejudice should it determine that they would unduly

---

[4] It has also been suggested that to assert jurisdiction over a permissive counterclaim, a district court must find a basis for personal jurisdiction over each counter-defendant. *See, e.g.,* 2 NEWBERG ON CLASS ACTIONS § 4:34 ("At a minimum, due process requirements bar counterclaims against nonresident class members who are beyond the territorial personal jurisdiction of the forum."). Wells Fargo has not identified any putative class member whom it purports will qualify as a counter-defendant. (D.E. 66). Because Plaintiffs bring their claims on behalf of a nationwide class, however, it is highly unlikely that all (or even most) prospective counter-defendants would be subject to personal jurisdiction in Florida.

complicate the litigation") (citing *S.E.C. v. Republic Nat'l Life Ins. Co.,* 383 F. Supp. 436, 438 (S.D.N.Y. 1974)); *see also, e.g.,* 2 NEWBERG ON CLASS ACTIONS § 4:34 ("The use of counterclaims against absent class members does not promote any of the[] Rule 13 objectives without serious reservations or limitations.").

Injecting WFB's conditional counterclaims against absent class members for deficiency judgments and unpaid premiums into these proceedings would significantly and needlessly burden this Court. In considering both the claims and the counterclaims, the Court would be required to weigh additional evidence unrelated to the Defendants' force-placed insurance scheme. Much of the new evidence, as WFB concedes with respect to certain notes and mortgages, has already "been tendered to the state courts." (D.E. 66 at 21). Indeed, the conditional counterclaim for deficiency judgments presumably arises from state-court judgments already entered in the states where the purported counter-defendants owned their homes. (*Id.* at 21-22). The deficiencies between what the putative counter-defendants owed on their mortgages and the amounts WFB received from foreclosure sales of their homes would most efficiently and easily be pursued in the state courts that entered the individual judgments of foreclosure.

Accordingly, the court should strike and/or dismiss WFB's permissive counterclaims in the interests of judicial economy, fairness and consistency and in keeping with the purposes of Federal Rule of Civil Procedure 13.

## IV. THE COURT SHOULD STRIKE AT LEAST THIRTY-ONE OF WELLS FARGO'S FIFTY-SEVEN AFFIRMATIVE DEFENSES.

A court may strike an affirmative defense pursuant to Federal Rule of Procedure 12(f) if the defense is insufficient as a matter of law. *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla.2002) (citation omitted). Affirmative defenses are also subject to the general pleading requirements of Rule 8(a) and "must be stricken if [they] provide[] no more than … bare bones conclusory allegation[s]." *Id.* at 684; *see Home Mgmt. Solutions, Inc. v. Prescient, Inc.,* No. 07–20608–CIV, 2007 WL 24112834, at *2 (S.D. Fla. Aug. 21, 2007). "As a general matter, courts have broad discretion in considering a motion to strike defenses." *Yazici v. Destiny of Davenport Fla., LLC*, 2011 WL 1233128, at *1 (M.D. Fla. Mar. 30, 2011).

Defendants assert fifty-seven affirmative defenses to Plaintiff's two state law claims. (D.E. 66 at 7-18). Of the fifty-seven defenses, (A) three have already been rejected by this Court as legally insufficient, (B) at least five more are legally insufficient on their face; (C) at least

11

nineteen are not affirmative defenses at all; (D) one, asserting a statute of limitations defense, is invalid on its face because Plaintiff defined the class to exclude claims barred by applicable statutes of limitation; and (E) at least five violate Federal Rule of Civil Procedure 8(a) because they are unsupported by ultimate facts or duplicative of other affirmative defenses.

### A. The Court Has Already Rejected Three of Defendants' Affirmative Defenses.

This Court rejected Defendants' Twenty-Second, Twenty-Third, and Thirty-Fourth Affirmative Defenses as legally insufficient in its order on Defendants' motion to dismiss Plaintiff's claims. (D.E. 64). Defendants assert in their Twenty-Second Affirmative Defense that Plaintiff's claims are barred by the filed rate doctrine. (D.E. 66 at 11). Wells Fargo asserted this defense in its motion to dismiss Plaintiff's claims, and the Court squarely rejected it. (D.E. 64 at 4-6).

Defendants assert in their Twenty-Third Affirmative Defense that Plaintiff's claims are barred because Wells Fargo's conduct was "consistent with conduct approved by the Office of the Comptroller of the Currency, the Office of Thrift Supervision, and other federal regulators." (D.E. 66 at 11). Wells Fargo also raised this defense as part of its preemption argument in its motion to dismiss,[5] (D.E. 38 at 10-16), and again, the Court rejected the defense. (D.E. 64 at 7-10). Defendants repeat the defense for a third time as their Thirty-Fourth Affirmative Defense, alleging that "[t]he claims are barred, in whole or in part, because they are preempted by the National Bank Act." (D.E. 66 at 13).

The Court's rulings that these defenses are legally insufficient to defeat Plaintiff's claims are the law of the case. *See, e.g., Acciard v. Whitney,* No. 2:07–CV–00476–FtM–36DNF, 2011 WL 4552564, at *2-*3 (M.D. Fla. Sept. 30, 2011) (striking affirmative defenses as barred by law of the case doctrine because court had resolved allegations that formed basis of defense on motion to dismiss). The Court should therefore strike Defendants' Twenty-Second, Twenty-Third, and Thirty-Fourth Affirmative Defenses. *See id.*

---

[5] WFB argued in its motion to dismiss that the misconduct alleged by Plaintiffs was consistent with regulations promulgated by the OCC. (D.E. 38 at 10-16). This defense has already been rejected by the Court. (D.E. 64 at 7-10). To the extent that WFB contends that its conduct complied with regulations of other agencies, the Twenty-Third Affirmative Defense should be stricken as conclusory because WFB does not specify to which regulations it refers. *See, e.g., Microsoft Corp.*, 211 F.R.D. at 684 (affirmative defenses based on bare-bones conclusory allegations must be stricken).

B.     **At Least Five of Defendants' Affirmative Defenses Are Insufficient on Their Face as a Matter of Law.**

Five more of Defendants' affirmative defenses are insufficient on their face and should be stricken as a matter of law. Defendants assert that Plaintiff's claims are barred by the doctrines of *in pari delicto,* equitable estoppel, and unclean hands because Plaintiff and the putative class failed to maintain their voluntary insurance, (D.E. 66 at 8-9), but the allegations on the face of the Amended Complaint foreclose all three defenses. Each of these defenses requires a showing of some fault on the part of party against whom they are asserted. A plaintiff is *in pari delicto* with the defendant if he or she has participated in "at least some of the same sort of wrongdoing" as the defendant. *Pinter v. Dahl*, 486 U.S. 622, 631 (1988). Here, Plaintiff does not contend that Wells Fargo was wrong to force-place insurance on his property in the first instance; he instead alleges that Wells Fargo artificially inflated the premiums charged by incorporating unearned commissions and other charges into their cost. (D.E. 37 at 77, 78, 81-86). Neither Plaintiff nor any member of the putative class could be in any way at fault for setting the artificially inflated premiums.

The equitable doctrine of estoppel is invoked "to avoid injustice in particular cases." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.,* 467 U.S. 51, 104 S. Ct. 2218, 2221, 81 L.Ed.2d 42 (1984); *see Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001) ("Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position[.]"). To establish an estoppel defense, a party must show that (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe that the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, not should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation. *Busby v JRHBW Realty, Inc.*, 513 F.3d 1314, 1326 (11th Cir. 2008) (holding that estoppel defense did not preclude certification where plaintiff sought to recover unearned brokerage commissions on behalf of the class and defendant had neither provided evidence nor contended that any potential class member knew true facts regarding the commission); *see, e.g., Riddle v. Citigroup*, 449 Fed. App'x 66, 69 (2d Cir. 2011) (equitable estoppel requires misrepresentation by party to be estopped with belief that other party will rely and reliance to the detriment of party receiving misrepresentation); *U.S. v. Walker*, 450 Fed. App'x 464, 468 (6th

Cir, 2011) (same); *Morsani*, 790 So. 2d at 1076 ("The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury."). Here, neither Plaintiff nor any member of the class can be said to have taken any action, let alone made a misrepresentation (as none is alleged), that caused Wells Fargo to act to its legal detriment. All members of the putative class who allowed their voluntary insurance to lapse, in fact, acted in a manner that was *anticipated* by Wells Fargo's form mortgage agreement, which *protects* Wells Fargo from any injury that might result from a lapse in voluntary insurance. (D.E. 38-1 ¶ 5).

The unclean hands doctrine applies similarly to absolve a defendant where the plaintiff has engaged in "unclean" conduct *connected to the wrongdoing alleged* and requires reliance by the defendant on the plaintiff's conduct. *See, e.g., Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245–46, 54 S. Ct. 146, 147–48, 78 L. Ed. 293 (1933) (doctrine applies "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation"); *American Hosp. Supply Corp. v. Hosp. Prods., Ltd.*, 780 F.2d 589, 601 (7th Cir. 1986); *McCollem v. Chidnese*, 832 So. 2d 194, 196 (Fla. 4th DCA 2002) ("the conduct constituting the unclean hands … must generally be connected with the matter in litigation and must affect the adverse party" and "is entirely irrelevant where the party asserting unclean hands … has taken no action in reliance on the unclean conduct") (citation omitted). Because the putative class acted in a manner consistent with the terms of the parties' contract and played no role whatsoever in artificially inflating Wells Fargo's force-placed premiums, the unclean hands defense cannot apply. Moreover, "[t]he unclean hands doctrine traditionally applies only to claims for equitable relief or in opposition to equitable defenses." *Coquina,* 2011 WL 4971923, at *15 (quoting *Regions Bank v. Old Jupiter, LLC,* No. 10–80188, 2010 WL 5148467, at *6 (S.D. Fla. Dec. 13, 2010)). Plaintiff in this case seeks to recover only economic damages. (D.E. 37 at 21). Thus, the unclean hands affirmative defense is further inapplicable as a matter of law. *See, e.g., Coquina,* 2011 WL 4971923, at *15 (citation omitted) (dismissing unclean hands affirmative defense where plaintiff sought money damages).

Wells Fargo's Tenth Affirmative Defense, asserting waiver, is also insufficient as a matter of law because an effective waiver must be *knowing* and voluntary. Here, that is, waiver

would require more than a mere showing that mortgagors knew that Wells Fargo was adding force-placed premiums to their mortgage loans. It would require a showing that the mortgagors knew that the premiums had been artificially inflated—to include administrative costs and unwarranted "kickbacks"—as a result of Defendants' force-placed insurance scheme. *See, e.g., In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 677-78 & 678 n.8 (S.D. Fla. 2011) (granting certification where defendants had withheld material information from consumers because waiver defenses in several states require showing of "full knowledge by Plaintiffs and members of the class of material facts making their actions knowing and voluntary") (citation omitted).

Finally, Defendants allege in their Sixth Affirmative Defense that Plaintiff's implied covenant claim is barred because Plaintiff and the putative class members breached their mortgage contracts by allowing their voluntary insurance policies to lapse. (D.E. 66 at 8). Because the breach alleged is not a material one, however, this defense is insufficient as a matter of law. *See* Section I, *supra*.

### C. Nineteen of Defendants' "Affirmative Defenses" Deny or Allege Defects in the Allegations That Comprise Plaintiff's Claims.

The Court should strike at least nineteen of Defendants' remaining "affirmative defenses" because they are not affirmative defenses at all, but statements denying or alleging defects in Plaintiff's claims against Wells Fargo. *See, e.g., American Home Assurance Co. v. Weaver Aggregate Transport, Inc.,* No. 5:10–cv–329–Oc–10TBS, 2011 WL 4346576, at *3, *4 (M.D. Fla. Sept. 16, 2011) (striking two affirmative defenses because matter asserted "would constitute a defect in American's prima facie case, not an affirmative defense"); *Vallesillo v. Remaca Truck Repairs, Inc.,* 09–80714–CIV, 2009 WL 4807397, at *4 (S.D. Fla. Dec. 4, 2009) (striking affirmative defenses because "simply put, a statement that alleges a defect in the plaintiff's case is a denial, not an affirmative defense"). This is true of Defendants' First and Thirteenth Affirmative Defenses (WFB not a party to the mortgage contracts) (D.E. 66 at 7, 9-10); Fifth Affirmative Defense (unjust enrichment claim precluded by parties' contract); Fourteenth Affirmative Defense (WFB did not breach an express term of the contracts) (*id.* at 10); Sixteenth and Forty-Sixth Affirmative Defenses (force-placed premiums are lower than voluntary coverage premiums in many areas/no damages) (*id.* at 10, 16); Seventeenth Affirmative Defense (Plaintiff

and the class could not obtain voluntary coverage) (*id.* at 10);[6] Nineteenth, Twenty-First, and Twenty-Ninth Affirmative Defenses (force-placed insurance premiums were reasonable/legal/in keeping with industry norms) (*id.* at 10-12); Twentieth, Forty-Fifth, and Forty-Ninth Affirmative Defenses (no damages suffered for some class members) (*id.* at 11, 15-16); Twenty-Fourth Affirmative Defense (impossibility of ascertaining damages) (*id.* at 12); Twenty-Fifth Affirmative Defense (Defendants' practices were adopted in furtherance of legitimate business interests) (*id.* at 12); Thirty-First Affirmative Defense (no duty owed to putative class) (*id.* at 13); Fiftieth Affirmative Defense (case not appropriate for certification) (*id.* at 16); Fifty-First Affirmative Defense (no proximate causation) (*id.* at 17); and Fifty-Seventh Affirmative Defense (speculative/unspecified state law defenses that will arise post-certification) (*id.* at 18).

### D. Defendants' Fifty-Sixth Affirmative Defense Is Precluded by the Definition of the Class.

WFB alleges in its Fifty-Sixth Affirmative Defense that applicable statutes of limitations in various states will bar the claims of the putative class in whole or in part. (D.E. 66 at 18). Plaintiff, however, defined the class to include only "borrowers who had mortgages with and/or serviced by Wells Fargo Bank, on properties located within the United States, who were charged premiums for force-placed insurance policies *within the applicable statutes of limitation*[.]" (D.E. 37 ¶ 58) (emphasis added). The Court should therefore strike Defendants' Fifty-Sixth Affirmative Defense because it is insufficient as a matter of law.

---

[6] Wells Fargo alleges in its Seventeenth Affirmative Defense that Plaintiff's claims are barred "because Plaintiff and/or the putative class members could not obtain voluntary insurance coverage." (*Id.* at 10). The upshot of this defense is that because Plaintiff could not obtain coverage, Wells Fargo and its selected insurers were entitled to impose force-placed insurance premiums on the proposed class at any rate, and in any amount, they saw fit. This goes to the reasonableness of Defendants' scheme, which is a critical disputed fact in this case. The Seventeenth Affirmative Defense, therefore, alleges only a defect in Plaintiff's claims and should be stricken as a matter of law. *See, e.g., Vallesillo,* 2009 WL 4807397, at *4 (striking affirmative defenses alleging defects in plaintiff's case).

### E. The Court Should Strike at Least Five of Defendants' Affirmative Defenses Because They Are Conclusory, Redundant, and/or Unsupported by Ultimate Facts.

Pursuant to Federal Rule of Civil Procedure 8(a), an affirmative defense "must be stricken if it provides no more than … bare bones conclusory allegation[s]." *Microsoft*, 211 F.R.D. at 684. At least five of Wells Fargo's affirmative defenses fail to satisfy the federal rule. For example, Wells Fargo alleges in its Thirty-Second Affirmative Defense that it was "justified in [its] conduct" without adding anything more. (D.E. 66 at 13). Similarly, in its Twenty-Fourth affirmative defense, Wells Fargo concludes without support that the damages claimed are unascertainable. (*Id.* at 12). In its Fortieth Affirmative Defense, Wells Fargo alleges without explanation that "[t]he claims are barred, in whole or in part, by the doctrine of novation," (*id.* at 14), and in its Thirtieth Affirmative Defense, Wells Fargo contends simply that "Plaintiff and the class members lack standing and/or a sufficient interest to challenge contractual relationships between WFB and other entities." (*Id.* at 13). Finally, Wells Fargo alleges in its Twentieth Affirmative Defense that Plaintiff's claims are barred because no case or controversy exists between WFB and Plaintiff or the putative class, and the Court therefore lacks subject-matter jurisdiction over Plaintiff's claims.[7] (D.E. 66 at 11). The Court should strike these affirmative defenses because they are unsupported by ultimate facts and therefore violate the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Microsoft*, 211 F.R.D. at 684.

---

[7] Moreover, Wells Fargo alleges lack of a case or controversy in at least three of its other affirmative defenses. (D.E. 66 at 15-16). This redundancy alone justifies striking the Twentieth Affirmative Defense. *See* Fed R. Civ. P 12(f) ("court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order striking or, in the alternative, dismissing, WFB's conditional counterclaims and striking at least thirty-one of Defendants' affirmative defenses as set forth above.

Respectfully submitted,

/s/ Rachel Sullivan

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>rn@kttlaw.com<br>**KOZYAK, TROPIN, &**<br>**THROCKMORTON P.A.**<br>2525 Ponce de Leon Blvd. 9th Floor<br>Coral Gables, FL 33134<br>Telephone: 305-372-1800<br>Facsimile: 305-372-3508<br>*Counsel for Plaintiff* | Lance A. Harke, Esq.<br>lharke@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>Sarah Engel, Esq.<br>sengel@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone: 305-536-8220<br>Facsimile: 305-536-8229<br>*Counsel for Plaintiff* |
| Jeffrey N. Golant, Esq.<br>jgolant@jeffreygolantlaw.com<br>**LAW OFFICES OF JEFFREY N.**<br>**GOLANT, P.A.**<br>1000 W. McNab Road, Suite 150<br>Pompano Beach, FL 33069<br>Telephone: 954-942-5270<br>Facsimile: 954-942-5272<br>*Counsel for Plaintiff* | Chip Merlin, Esq.<br>cmerlin@merlinlawgroup.com<br>Mary E. Fortson, Esq.<br>mfortson@merlinlawgroup.com<br>Sean M. Shaw, Esq.<br>sshaw@merlinlawgroup.com<br>**MERLIN LAW GROUP, P.A.**<br>777 S. Harbour Island Blvd., Suite 950<br>Tampa, FL 33602<br>Telephone: 813-229-1000<br>Facsimile: 813-229-3692<br>*Counsel for Plaintiff* |

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), we hereby certify that counsel for the movant has conferred with Counsel for Wells Fargo in a good faith effort to resolve the issues raised in this motion, but has been unable to resolve the same.

/s/ Rachel Sullivan

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on the 9th day of July, 2012 and served by the same means on David B. Esau, Esq., desau@carltonfields.com, and Michael K. Winston, Esq., mwinston@carltonfields.com, Carlton Fields, PA, City Place Tower, 525 Okeechobee Blvd., Suite 1200, West Palm Beach, FL 33401.

/s/ Rachel Sullivan