UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.11-CV-81373-DMM

MARK KUNZELMANN;
on behalf of himself and all others
similarly situated;

       Plaintiff,

v.

WELLS FARGO BANK, N.A. and
WELLS FARGO INSURANCE, INC.

       Defendants.
_____/

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

This case is uniquely suited for class certification. Defendants Wells Fargo Bank ("WFB") and Wells Fargo Insurance ("WFI") can not dispute four important facts: (1) an 11% "commission" was charged to every putative class member during the class period and never varied; (2) WFI never worked on any individual borrower's case file to earn the 11% commission; (3) due to recent federal investigations, as of June 2012, the 11% is no longer charged to WFB customers and WFB's insurers have been asked to reduce the rates that they charge to force-placed borrowers by 11%; and (4) Assurant's "Commission Department" can readily identify and locate every WFB homeowner who was charged the 11% commission.[1]

As this Court held in rejecting Wells Fargo Bank's filed-rate doctrine defense, "Plaintiff challenges the manner in which Defendants select insurers, the manipulation of the force-placed insurance process, and the impermissible kickbacks that were included in the premiums." (D.E. 64 at 5). Defendants focus their arguments on why WFI's 11% commission is fair and reasonable. They may raise this argument at trial, however, the issue before the Court here is whether that question can be answered on a class-wide basis and, as set forth below, it clearly can. The Court should grant Plaintiff's Motion for Class Certification.

## I. PLAINTIFF'S PROPOSED CLASS DEFINITION IS NARROWLY DRAWN.

Defendants argue that Plaintiff's proposed class definition is overbroad "because it is not limited to borrowers who actually 'paid' LPI premiums." (D.E. 70 at 10). Wells Fargo contends that borrowers who were charged, but did not pay force-placed premiums suffered no injury and are not properly included in the class. (*Id.*). As the court ruled in *Williams*, this argument misses the point. *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, 2012 WL 566067, at *6 (S.D. Fla. Feb. 21, 2012). Every borrower who was charged force-placed insurance premiums had the value of the premiums either deducted from their escrow accounts or added to the balances their mortgage loans. (D.E. 37 ¶ 31). Those who have not yet paid *still owe Wells Fargo the full amount of the inflated premium.* If Plaintiff prevails in this action, those borrowers will have their obligations reduced. *See Williams*, 2012 WL 566067, at *6. Their injury is the difference between their outstanding balance and the amount that they would owe had the Defendants not undertaken to artificially inflate force-placed insurance premiums.

Plaintiff's class definition is tailored to include only those Wells Fargo borrowers who

---

[1] *See* Transcript of Deposition of Ronald Wilson at 162:24-163:25, attached as **Exhibit A.**

have suffered damages as a result of Defendants' force-placed scheme. (D.E. 62 at 7-8). It excludes borrowers who are barred by statutes of limitations, as well as others who may not have suffered injuries because, for example, their loans had been adjusted or their properties foreclosed upon. (*Id.*). Plaintiff will also exclude borrowers with force-placed flood policies from the class.

## II. PLAINTIFF HAS SATISFIED THE PREDOMINANCE REQUIREMENT.

### A. Variances in the Fifty States' Laws Do Not Defeat Certification.

Wells Fargo argues that variances in the fifty states' articulations of the law of unjust enrichment preclude certification of a nationwide class. (D.E. 70 at 9-13). Wells Fargo, however, relies on opinions issued by federal courts in other jurisdictions denying class certification because of variances in the states' unjust enrichment laws that were material to those plaintiffs' claims. (*Id.* at 12-13).[2] This court and others, however, have certified multistate unjust enrichment classes where, as here, plaintiffs and the class will offer common proof that focuses on wrongful conduct by the defendants. *See, e.g., Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) ("Here, the variations among some states' unjust enrichment laws are not material because they do not significantly alter the central issue or the manner of proof in this case."); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 568-69 (E.D. Mich. 2009) (common issues predominated where "plaintiff's theory [wa]s that the defendant had a systematic scheme to overcharge individuals for title insurance"); *In re Abbott Labs. Norvir Antitrust Litig.*, Nos. C-04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *9-10 (N.D. Cal. Jun. 11, 2007) (certifying unjust enrichment class where "the variations among some States' unjust enrichment laws do not significantly alter the central issue or the manner of proof"); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) (certifying multistate unjust enrichment class where plaintiffs would present common evidence of unjust enrichment, and particularly of "appreciation" element only required by certain states).

Wells Fargo relies on *Virgilio v. Ryland Group*, 680 F.3d 1329 (11th Cir. 2012), to demonstrate that material variations exist among the various states' articulations of the law of unjust enrichment, arguing that the court's holding supports the general proposition that an unjust enrichment claim does not lie under Florida law "where a commission is paid to the

---

[2] Wells Fargo cites one Florida opinion from the state's Fifteenth Judicial Circuit, (D.E. 70 at 12), but that opinion applies a state rule of procedure (Fla. R. Civ. P. 1.220), and does not bind this court.

2

defendant by a third party out of the total sales price charged to the plaintiff." (D.E. 70 at 9-10). This is not what the Eleventh Circuit held. *Ryland Group* involved contracts for the sale of real property, and whether the seller and certain entities that had provided marketing services to the seller had duties to disclose to buyers that their residential community was adjacent to a former bombing range. 680 F.3d at 1332-33, 1337. The plaintiffs brought an unjust enrichment claim against one of the marketing entities, seeking to recover a fee that it had collected pursuant to a contract with the seller (amounting to 1.5% of the gross sales price of each home), on the ground the marketing entity had failed to disclose the latent defect to plaintiffs pre-purchase. *See id.* at 1333. The Eleventh Circuit upheld the lower court's dismissal of the unjust enrichment claim, reasoning that the plaintiffs had not conferred a benefit on the marketing defendant because the 1.5% fee had not come from their pockets—it had been paid by the seller as compensation for the services that the marketing defendant had provided. *See id.* at 1337. The purchase prices of the plaintiffs' homes, that is, would not have been reduced by 1.5% had the fee not been paid. *Id.* That is not the case here. WFI's corporate representative testified at his deposition that cancelling the 11% commission to Assurant would, in fact, "reduce the rates that [Assurant] charge[es] to Wells Fargo borrowers by equivalent amounts[.]" (D.E. 70-6 at 40:9-19). WFI's commission is taken at the borrower's expense, not that of the insurer.

Wells Fargo offers a survey setting forth elements and defenses that it contends create material variances among the fifty states' unjust enrichment laws. (D.E. 70-16). The defenses that Wells Fargo raises—statutes of limitation and unclean hands—are inapplicable here, as Plaintiff excluded borrowers whose claims are barred by applicable statutes of limitation from the class, and unclean hands is an equitable defense that requires a showing that the plaintiff participated in the same kind of wrongful conduct of which the defendant is accused. *See* Section II.C, *infra*. That cannot be the case here, as no member of the putative class participated in Wells Fargo's force-placed scheme to artificially inflate premiums. *See id.*

That some states require the "added element" of wrongful conduct by the defendant (D.E. 70-16) does not impede certification here because Plaintiff alleges that WFB and WFI acted in bad faith, knowingly inflating premiums to include unearned commissions and other costs.[3,4] (D.E. 37 ¶¶ 2, 18, 32, 76, 78). Plaintiff will offer evidence of this bad faith conduct,

---

[3] The heading in Wells Fargo's survey implies that a plaintiff must allege "fraud, mistake, or misrepresentation" in certain states in order to state an unjust enrichment claim. (D.E. 70-16).

3

thereby proving the class claims in those states requiring wrongful conduct. *See In re Terazosin*, 220 F.R.D. at 697 n.40 (added element did not defeat certification where plaintiffs would "present common evidence establishing th[e] … additional element").

Wells Fargo also contends that ten states require a plaintiff to show that it conferred a direct benefit on the defendant. (D.E. 70-16). As Judge Altonaga held in *Williams*, however, this "direct benefit" element in Florida law does not require that the benefit pass directly from plaintiff to defendant, as Wells Fargo suggests; it requires only that the defendant directly benefit through profits earned from its wrongful conduct. *See Williams,* No.11-cv-21233 (S.D. Fla. Sept. 19, 2011) (D.E. 76 at 15-18) (citing *Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007)). The same holds true in at least nine of the other ten states that Wells Fargo contends require privity. *See, e.g., see also Stewart v. Beam Global Spirits & Wine, Inc.*, Civ. A. No. 11-5149, at *7-8 (D.N.J. Jun. 29, 2012) (same, applying New Jersey law and citing *Williams* and *Romano*); *In re K-Dur Antitrust Litig.*, MDL No. 1419, 2008 WL 2660783, at *10 (D.N.J. Mar. 19, 2008) (holding that direct benefit is not essential element of unjust enrichment claim under Michigan law) (citations omitted); *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006) ("Plaintiffs need not have directly dealt with each defendant in order to allege a claim of unjust enrichment against them[]" under Pennsylvania law); *Randelman v. Fidelity Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812, 824-25 (N.D. Ohio 2006) (title insurer unjustly enriched under Ohio law by inflated premiums paid by class of homeowners where lender obtained insurance for homeowners as part of refinancing; liability

---

This is not the case in any of the 49 states at issue. All that is required in any state is a showing of some wrongful conduct, including abuse of relationship, bad faith, or some form of "imposition." (*Id.*). The record also establishes that Wells Fargo represented to Plaintiff and the class that WFI would collect a commission for procuring insurance policies for individual borrowers' properties, when in fact, a master policy was already in place. *See* pp. 6-7, *infra.*

[4] Wells Fargo cites *Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009), for the proposition that unjust enrichment requires a showing of either fraud or breach of duty. (D.E. 70-16 at 17). The *Zoeller* language that Wells Fargo quotes*,* however, describes the requirements for a constructive trust, not unjust enrichment. *See* 904 N.E. 2d at 221. An Indiana unjust enrichment plaintiff must show only "that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 2001). An unjust enrichment claim will lie in Indiana where the defendant is not alleged to have been involved in any wrongdoing. *See Dominiack Mech., Inc. v. Dunbar*, 757 N.E.2d 186, 190-91 (Ind. App. 2001).

4

arose from "transactional nexus" between homeowners and insurer); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 668 (E.D. Mich. 2000) (no direct benefit or privity required by Michigan, North Carolina, or eight other states);[5] *Security Benefit Life Ins. Corp. v. Fleming Cos., Inc.*, 908 P.2d 1315, 1322-24 (Kan. App. 1995) (parties who knowingly received property that had not been paid for through intermediaries were unjustly enriched thereby);[6] *Hausam v. Schnabl*, 887 P.2d 1076, 1081 (Idaho App. 1994) (father unjustly enriched by loan taken out by son and deposited in father's business account); *Midland Diesel Serv. & Engine Co. v. Sivertson*, 307 N.W.2d 555, 558 (N.D. 1981) (one who somehow participated in transaction between parties in privity may be liable for unjust enrichment).[7, 8]

    **B.**    **Individualized Facts Do Not Predominate.**

    **1.**    **Implied Covenant of Good Faith and Fair Dealing**

Wells Fargo contends that individualized fact issues arising from Plaintiff's breach of the implied covenant claim predominate over issues common to the Florida subclass. But the issues Wells Fargo raises are not really issues in this case at all, and do nothing to impair the proposed class members' claims. Wells Fargo first argues that the Court will have to analyze whether individual class members were "in a contractual relationship" with Wells Fargo and review the particular language of each class member's mortgage. (D.E. 70 at 18). By definition, all members of the proposed class are "in a contractual relationship" with Wells Fargo. (D.E. 62 at 3-4 (defining class to include "[a]ll borrowers who had mortgages with and/or serviced by Wells Fargo Bank…")). It is this relationship from which WFB's right to force place insurance

---

[5] Wells Fargo's survey accords with *In re Cardizem* as to the other eight states. (D.E. 70-16).

[6] *See also Peterson v. Midland Nat'l Bank*, 747 P.2d 159, 166-67 (Kan. 1987).

[7] *See also Lochthowe v. C.F. Peterson Estate*, 692 N.W.2d 120, 124 (N.D. 2005) ("a third party who derives gain from an agreement between others has not necessarily been unjustly enriched, *unless the third party has somehow participated in the transaction through which the benefit is obtained*") (citation omitted and emphasis added).

[8] Wells Fargo's survey also reflects that there are no material variances among the fifty states with regard to the black letter principle that an unjust enrichment claim will not lie where the parties are bound by contact or plaintiff has another adequate remedy at law. (D.E. 70-16). This does nothing to impede certification, as Plaintiff alleges an unjust enrichment claim only on behalf of class members not in privity with WFB (if any exist), and on behalf of the proposed class as against WFI, with whom no WFB borrower is alleged to have an express contract.

derives—if any borrower were not bound by contract to WFB, WFB would not be entitled to place coverage on his or her property or collect premiums in the first instance. Those rights derive from the mortgage agreement and only from the mortgage agreement. (D.E. 38-1 ¶ 5). And a borrower not in privity with WFB would have an unjust enrichment claim against it arising from the same conduct and for the same damages. (D.E. 37 ¶¶ 80-86).

Nor will resolution of the breach of implied covenant claim require the Court to review borrowers' individual contracts with WFB. (D.E. 70 at 18). Plaintiff has alleged, and Wells Fargo does not dispute, that the force-placed provision in WFB's standard form mortgage agreement is materially identical across the class. (D.E. 37 ¶¶ 16-17). As Wells Fargo concedes, the mortgage agreements give WFB the right to force-place insurance on a borrower's property in the event of a voluntary lapse, while informing the borrower that the force-placed policy may carry a higher premium than his or her voluntary insurance. (D.E. 38-1 ¶ 5, D.E. 70 at 2). Slight variances in the particular language that Wells Fargo may use are immaterial to Plaintiff's claims as long as no class member with a force-placed provision in his or her contract was informed that the premiums charged would be inflated to cover unearned commissions.

Wells Fargo's contention that it disclosed to some, but presumably not all, members of the proposed class that WFI would act as an agent for Assurant and receive a commission for its work does not impede certification. (D.E. 70 at 7). Plaintiff does not claim damages that arise from the *fact of* WFI's commission. Instead, Plaintiff claims that the premiums were inflated and the commission was unearned, and was therefore not properly charged to Wells Fargo borrowers. (D.E. 37 ¶¶ 2, 18-20, 39, 78). To create an individualized issue, that is, the disclosure would have had to reveal to some borrowers that WFI did nothing to earn its commission. Moreover, the disclosure on which Wells Fargo relies informs the borrower that if new insurance is force placed, "it *will* be obtained with the assistance of Wells Fargo Insurance … [which] acts as agent for the insurance company and will receive a commission on the insurance we obtain." (D.E. 70-15 at 58 (emphasis added)). Wells Fargo, however, has *already* secured a master policy to cover its *entire portfolio* of mortgages by the time it sends the disclosure to its borrowers, (D.E. 62-7 at 40:6-10, 53:17-22), and *QBE and Assurant* make arrangements with an insurance carrier to issue the master policy. (*Id.* at 53:17-22). WFI does not coordinate the master policies and, as WFI's corporate representative conceded, it *does not*

6

purchase individual policies for borrowers after their voluntary insurance has lapsed. (*Id.* at 53:11-22, 54:1-3).

Wells Fargo also argues that the Court will need to determine whether Defendants' artificially inflated premiums frustrated individual borrowers' reasonable expectations. (D.E. 70 at 18). Wells Fargo is simply incorrect. Every putative class member in this case received the same form letter announcing that WFB would force place insurance on his or her property. (D.E. 62-9 at 34:10-20). Neither that letter nor any other documents provided to Wells Fargo borrowers disclosed that the premiums that would be charged to the borrower had been manipulated by Defendants and inflated to include unearned commissions. As a result, all class members had the reasonable expectation that he or she would not be charged these costs.

Wells Fargo sets forth a list of additional allegedly "individual issues," each of which it contends will impede certification, (D.E. 70 at 18-19), but Wells Fargo is incorrect in every instance. Liability in this case depends on whether Wells Fargo manipulated its force-placed program to charge *all borrowers* an inflated premium that included an unearned 11% commission and impermissible administrative costs. (D.E. 37 ¶¶ 29, 32, 35, 39-40; D.E. 62 at 6-7, 15). Issues such as the benefits to individual borrowers of receiving force-placed insurance coverage and their individual "expectations about LPI insurance" generally (D.E. 70 at 18-19) do not bear on the question of whether Wells Fargo is entitled to retain the inflated portion borrowers' premiums, as *no* borrower benefitted from WFI's *unearned* commissions or expected to have their insurance premiums inflated to include impermissible costs. The relative cost of "non-LPI" coverage has no relevance to the question of liability here for the same reason, and individual foreclosure judgments or bankruptcy filings would have no *res judicata,* collateral estoppel, or *Rooker-Feldman* effect. *See* pp. 9-10, *infra*. The question of "what portion of the commission was truly earned[,]" (*id.* at 19), is not an individual issue, as WFI's corporate representative conceded that WFI—the entity that takes the "commission"—does *no* work at all on individual borrowers' files.[9] (D.E. 70-2). Finally, whether a borrower has paid or still owes

---

[9] This conclusion is confirmed by reference to the affidavit of WFI's Insurance Division Manager, David Franske, (D.E. 70-2), which does not establish that WFI did *anything* to earn a commission in connection with Defendants' force-placed insurance scheme. Defendants charge borrowers premiums for force-placed insurance that purport to include an 11% *commission* to WFI as a *broker* for *finding* and *placing* the policies. (D.E. 70-15 at 58). To support this "commission," however, Franske simply sets forth a laundry list of ministerial functions

premiums has no effect on liability, *see* Section I, *supra*, and Wells Fargo's deficiency judgments counterclaim and other "offset" issues go to damages and do not present an obstacle to certification. *See, e.g., Yokoyama v. Midland Nat'l Life Ins. Co.,* 594 F.3d 1087, 1093-94 (9th Cir. 2010) ("[t]he amount of damages is invariably an individual question and does not defeat class action treatment") (citation omitted); *Allapattah Servs., Inc.* v. *Exxon Corp.,* 333 F.3d 1248, 1261 (11th Cir. 2003) ("numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate"); *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 677 (S.D. Fla. 2011) ("The Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification.") (citations omitted). Moreover, Plaintiff has moved to dismiss Wells Fargo's conditional counterclaims, (D.E. 76), and that motion should be granted.

   **2.   Unjust Enrichment**

Defendants raise equally deficient arguments with respect to Plaintiff's unjust enrichment claim. Wells Fargo first argues that borrowers who contracted with WFB cannot bring unjust enrichment claims against it. (D.E. 70 at 18). Plaintiff, however, does not bring an unjust enrichment claim on behalf of borrowers who contracted with WFB.

Defendants also assert that the question of whether it accepted a benefit conferred on it by the class must be considered on a borrower-by-borrower basis. (D.E. 70 at 18). This argument necessarily fails. Plaintiff alleges a common scheme by which Wells Fargo uniformly charged mortgagors amounts in excess of the value of the policies placed on their homes. (D.E. 37 ¶¶ 5, 21). WFI took an 11% commission on every premium charged or paid regardless of individual circumstances and without doing any work to earn the commission. (*Id.* ¶ 5; D.E. 62-

---

performed by WFI that are unnecessary to its supposed function as a broker that *are in no way relevant to the alleged force-placed insurance scheme.* (D.E. 70-2 ¶ 3(a), (b)). For example, Wells Fargo explains that WFI "is the Wells Fargo subject matter expert on all escalated borrower complaints about lender-placed insurance[,] (*id.* ¶ 3(a)(i)); "drafted and redrafted the Property Insurance Requirements notice for Wells Fargo Home Mortgage in 2004, 2007, and 2010[,]" (*id.* ¶ 3(a)(ix)); "wrote the first draft of more than 30 Dodd-Frank compliant borrower notices for Wells Fargo Home Mortgage[,]" (*id.* ¶ 3(a)(xvi)); and "participated in the National Flood Conference, sponsored by [FEMA] every year since 2005[,]" (*id.* ¶ 3(b)(f)). These costs are not properly part of an 11% brokerage commission and in no way cut into the 11% kickback that WFI takes from mortgagors' high-cost insurance premiums. As a result, no individualized inquiry relating to these functions will be required.

5 at 15:17-21; D.E. 62-6). Therefore no individualized inquiry will be required to resolve the class's claims for unjust enrichment.

### C. Wells Fargo's Defenses Do Not Raise Individualized Issues That Pose an Impediment to Certification.

WFB has asserted a remarkable *fifty-seven* affirmative defenses to Plaintiff's two claims. (D.E. 66). Defendants have pled many affirmative defenses without supporting ultimate facts, *see, e.g., Castillo v. Roche Labs., Inc.,* 2010 WL 3027726, at *1-2 (S.D. Fla. Aug. 2, 2010) (applying *Twombly* and *Iqbal* standard to affirmative defenses and holding that defense that offer mere "labels and conclusions … will not do"); others simply have no merit. Accordingly, Plaintiff has moved to strike thirty-two of Wells Fargo's affirmative defenses. (D.E. 76).

Many of Defendants' affirmative defenses focus on their own conduct, and would not raise individualized issues even if valid. Defendants assert, for example, that their conduct was reasonable under the circumstances and consistent with industry norms. (D.E. 66 at 11-12). Defenses that would dispose of Plaintiffs' claims as a matter of law (such as preemption or lack of subject matter jurisdiction) similarly have no bearing on class certification. (*Id.* at 13, 15-16).

It is well established that defenses that go only to damages do not create individualized issues that predominate over common questions. *See* p. 9, *supra*. Accordingly, neither Defendants' counterclaim for deficiency judgments nor their set-off defenses impede certification. *See, e.g., Allapattah,* 333 F.3d at 1261 (district court did not err in holding that set-off claims and affirmative defenses could be raised during claims administration process); *Hinson,* 275 F.R.D. at 647-48 (set off claims only affect measure of damages, and individual damages determinations do not preclude certification where liability can be established on a class-wide basis) (citations omitted); *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1116 (5th Cir. 1978) ("[t]he potential assertion of counterclaims against these few members of the proposed class cannot be allowed to defeat an otherwise valid class action"); *Gilkey v. Cent. Clearing Co.,* 202 F.R.D. 515, 529 (E.D. Mich. 2001) (presence of counterclaims against class members who defaulted on loans "does not defeat the rights of the greater class to vindicate their rights").

Wells Fargo also claims to have res judicata, collateral estoppel, merger, and/or *Rooker-Feldman* defenses against putative class members who have had state foreclosure judgments entered against them. (D.E. 70 at 19-20). But those defenses will not protect Wells Fargo because the issues in this action (e.g., whether insurance premiums were inflated as a result of Defendants' common scheme) were not before the state courts that entered those judgments.

9

Nor does the laundry list of defenses raised by Wells Fargo elsewhere in its motion threaten certification of the proposed class. Defendants raise *in pari delicto*, equitable estoppel, and unclean hands defenses on the ground that the putative class members failed to maintain voluntary insurance on their properties. (D.E. 70 at 14-15, 19-20). These defenses are alleged against all class members—in order to have had insurance force-placed on their properties, all class members necessarily allowed their insurance to lapse. No individualized issues arise from the defenses. *See, e.g., Smilow v. Sw. Bell Mobile Sys.,* 323 F.3d 32, 39 (1st Cir. 2003) (affirmative defense common to class does not impede certification). Moreover, these defenses have no application here because by allowing their voluntary insurance to lapse, putative class members did not engage in the kind of "wrongful conduct" that these defenses were designed to combat. *See, e.g., Pinter v. Dahl,* 486 U.S. 622, 632 (1988) (application of *in pari delicto* defense has been expanded to situations "closely analogous to those encompassed by the unclean hands doctrine, where the plaintiff has participated in some of the same sort of wrongdoing as the defendant") (citation and internal quotations omitted). For those defenses to succeed, class members would have had to participate in artificially inflating their own premiums.[10]

Wells Fargo's assertion of the voluntary payment doctrine as an impediment to certification is similarly off point. The voluntary payment defense requires a defendant to show that the plaintiff had full knowledge of all material facts before tendering payment. *In re Checking Account Overdraft Litig.*, MDL No. 2036, 2012 WL 1134483 (S.D. Fla. Apr. 3, 2012), at *10 & n.8; *In re Foodservice Inc. Pricing Litig.*, No. 3:08-md-1894, 2011 WL 6013551, at *6 (D. Conn. Nov. 29, 2011); *see also Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 648-49 (S.D.N.Y. 2011) ("the voluntary payment doctrine does not apply when a plaintiff's claim is predicated on a lack of full disclosure by defendant"). To succeed on the defense here, Wells Fargo would have to prove that members of the class were aware not only that they were being charged force-placed premiums, but also that Defendants had inflated the premiums to include unearned kickbacks to WFI and impermissible administrative costs. Wells Fargo does not contend that even one class member could have had knowledge of all relevant facts.[11]

---

[10] Plaintiffs have also moved to strike WFB's unclean hands defense as is invalid as a matter of law because Plaintiffs seek monetary damages, not equitable relief. (D.E. 76 at 13-15).

[11] It would be impossible here for Wells Fargo to show that any class member paid force-placed premiums "voluntarily" in any sense. Many Wells Fargo borrowers had the cost of the

Finally, Defendants argue that the filed-rate doctrine precludes certification. This Court has already disposed of Wells Fargo's filed-rate defense. (D.E. 64 at 5). Wells Fargo argues that circumstances have changed because Plaintiff now seeks to recover the 11% unearned commission WFI collects from every force-placed borrower, and no longer challenges Defendants' manipulation of the force-placed process. (D.E. 70 at 21-23). But Plaintiff *always* sought to recover the 11% commission, and *still* contends that Wells Fargo manipulated the process by entering into an exclusive arrangement with Assurant to charge inflated premiums. (D.E. 62 at 14-16). This Court was clear in its motion to dismiss order that the filed-rate doctrine does not apply because "Plaintiff challenges the manner in which Defendants select insurers, the manipulation of the force-placed insurance process, and *the impermissible kickbacks that were included in the premiums*[,]" including the 11% commission. (D.E. 64 at 5) (emphasis added).

The filed-rate doctrine, moreover, only bars claims against insurers that are statutorily mandated to file rates with state insurance regulators—it does not bar claims against banks, brokers, or other non-filing entities. *See, e.g., Abels v. J.P. Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 1273, 1277-79 (S.D. Fla. 2009) (filed-rate doctrine did not bar plaintiffs' claims against

---

premiums deducted from their escrow accounts, while others had the amounts added to the balance of their mortgage loans. (D.E. 37 ¶ 31). Borrowers who had force-placed premiums deducted from their escrow accounts cannot be said to have paid "voluntarily." Some of the remaining putative class members were charged for but have not paid the premium amounts that were added to their loans, (D.E. 62 at 11; D.E. 62-7), and those who did pay the monthly mortgage payments (that included the force-placed premiums) did so with knowledge that nonpayment would constitute defaults on their mortgage loans and could ultimately cause their properties to go into foreclosure. Because these borrowers were faced with a choice between withholding payment and default, the payments in question cannot be deemed voluntary. *See, e.g., Parino v. BidRack, Inc.*, No. 11-cv-3149, 2011 WL 4479462, at *6 (N.D. Cal. Sept. 26, 2011) (voluntary payment doctrine did not bar plaintiff's claim to disputed charges paid with credit card even though she had continued to pay bill so as to remain in good standing with creditors); *Jenkins v. Mercantile Mortg. Co.*, 231 F. Supp. 2d 737, 753 (N.D. Ill. 2002) (recognizing "traditional defenses to the voluntary payment doctrine—fraud and mistake of fact—defenses designed to identify instances in which the countervailing policies of traditional restitutionary principles should prevail"); *Durant v. ServiceMaster Co.*, 159 F. Supp. 2d 977, 981 (E.D. Mich. 2001) (claim for overcharge paid under mistake of fact not barred by voluntary payment doctrine).

11

bank, as bank did not file rates with state regulatory agency); *see also Sec. Servs. v. Kmart Corp.,* 511 U.S. 431, 436 (1994) (carrier that filed tariff rates lacking an essential element could not assert filed-rate defense, because carrier, in effect, had no rates on file); *In re Managed Care Litig.,* 150 F. Supp. 2d 1330, 1344 (S.D. Fla. 2001) (holding that the filed-rate doctrine did not apply to entities that did not have "extensive administrative oversight"). WFB and WFI are not insurers that file rates and, thus lack standing to assert the filed-rate defense. *See Abels*, 678 F. Supp. 2d at 1277-79. The filed-rate doctrine does not shield either Defendant from liability.

Even if individual determinations proved necessary with regard to one or more of Defendants' affirmative defenses, the proposed class would still satisfy the predominance requirement. "Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual class members." *Smilow,* 323 F.3d at 39 (citations omitted).

### III. PLAINTIFF'S EXPERT HAS IDENTIFIED A REASONABLE METHODOLOGY FOR GENERALIZED PROOF OF DAMAGES.

Defendants have chosen to attack the qualifications and opinions of Plaintiff's expert, Birny Birnbaum, as a last stand against certification. (D.E. 70). Defendants recently filed a motion to exclude Mr. Birnbaum's testimony. (D.E. 69).[12] Plaintiff has responded to that motion together with this Reply, and incorporates the arguments set forth in his response here.

Contrary to Defendants' response, Mr. Birnbaum has specifically provided a method for assessing class-wide damages in this action. (D.E. 79-1 at 27). Mr. Birnbaum's has opined that the entire uniform 11% commission paid to WFI and then routed to WFB is unreasonable. This unreasonable kickback was paid by, or charged to, each and every member of the class in the same uniform fashion. Mr. Birnbaum's opinion also states that additional damages in the form of unreasonable expenses may also be included in his damages analysis once those documents and data are produced. *Id*.

Indeed, the central allegation in this action is that WFB ultimately pays $0.89 for every dollar it charges its borrowers, a practice its own expert says is "not appropriate." (Transcript of Deposition of Jeffrey G. McKinley at 59-60, attached as **Exhibit B**). The calculation of class-wide damages is straightforward with an identifiable methodology that will be completed at trial.

---

[12] Wells Fargo filed a similar motion in *Williams,* which the court denied when it certified the *Williams* class. *See Williams*, No. 11-cv-21233 (D.E. 142, 154, 211).

### IV. MANAGEABILITY CONCERNS DID NOT ARISE POST-CERTIFICATION IN *WILLIAMS*.

Wells Fargo argues that manageability concerns have arisen since certification in *Williams* and that this Court should not rely upon the *Williams* decision. Most of these "manageability" issues, however, were specifically argued before Judge Scola, considered by him, and rejected. *See Williams,* (D.E. 204 at 36-37, 39-40); *see also Williams*, 2012 WL 566067, at *6. These same issues were argued again in the Defendants' Rule 23(f) Petition, which the Eleventh Circuit denied. *See Williams* (D.E. 228-1, 242, 243).[13]

There are not "innumerable problems with identifying class members." (D.E. 62 at 24). To the contrary, all categories of borrowers that Wells Fargo discusses can be identified from its own records, and Wells Fargo does not contend otherwise. In fact, Wells Fargo has produced in *Williams* a preliminary list of all class members, and the final list should be completed shortly.

As explained more fully in *Williams*, there is no need to exclude borrowers with refinance agreements. (D.E. 250 at 9-10). Those who have refinanced paid their premiums in full and waived no claims against Wells Fargo. *See Williams*, 2012 WL 566067, at *6.

As to borrowers currently in foreclosure litigation,[14] this issue was fully argued before and rejected by Judge Scola. Additionally, Wells Fargo argued in its Rule 23(f) Petition that such borrowers should be excluded, yet the Petition was denied. There is no reason why both cases cannot proceed simultaneously, and Wells Fargo has not shown that this Court should defer to the currently pending state court foreclosure cases, especially when Wells Fargo has not shown that any of those cases are addressing the complex issues relating to the kickbacks and excessive commissions that are being litigated here.[15]

---

[13] Wells Fargo is taking a third bite at the apple in *Williams* with its recently filed Motion to Modify and/or Clarify Class Definition. *See Williams* (D.E. 246). Plaintiffs have fully responded to the Motion to Modify and Plaintiff Kunzelmann incorporates that Response herein. *See id.* (D.E. 250).

[14] Curiously, Wells Fargo argues that those borrowers with foreclosure judgments against them should not be a part of the class. Plaintiff, however, has already specifically excluded such borrowers from the class definition, so there is no dispute on this issue. (D.E. 62 at 7-8).

[15] Wells Fargo's citation to *First State Bank v. Goldstein*, No. 11-cv-80625 (S.D. Fla. 2011) (D.E. 16) is inapposite. The *Goldstein* federal case did not involve a claim that the premium for force-placed insurance was too high or contained kickbacks. *Id.* Rather, both the federal and state cases were similar actions to foreclose upon the same mortgage on the same piece of property.

13

Nor is bankruptcy a bar to certification. *See FirstPlus Home Loan Owner 1997-1 v. Bryant*, 372 Ark. 466, 481 (Ark. 2008); A. Conte & H. Newberg, *Newberg on Class Actions* § 2.7, at 88 (4th ed. 2002). Indeed, class actions are consistently certified in this District and in the Eleventh Circuit without excluding absent class members that have filed for bankruptcy. *See, e.g., Fitzpatrick v. General Mills, Inc.,* 263 F.R.D. 687 (S.D. Fla. 2010), *affirming certification and broadening class definition*, 635 F.3d 1279, 1283 & n.1 (11th Cir. 2011); *In re Checking Overdraft Litig.,* MDL No. 2036, 2011 WL 3158998, *680-81 (S.D. Fla. Jul. 25, 2011); *Nelson v. Mead Johnson*, 270 F.R.D. 689, 693 (S.D. Fla. 2010); *In re Terazosin,* 220 F.R.D. 672.

Finally, Wells Fargo argues that the determination of who falls into the class definition is "not static." (D.E. 70 at 25). This is common and certainly no reason to deny certification. The class definition has a cut-off date, including only borrowers who "were charged for force-placed within the applicable statutes of limitation through December 20, 2011." (D.E. 62 at 7-8).

## V.     PLAINTIFF IS TYPICAL OF THE CLASS HE SEEKS TO REPRESENT.

Wells Fargo contends that Plaintiff is atypical because he has a mortgage contract with WFB. However, the putative class is comprised of homeowners with mortgages "owned and/or serviced" by WFB, (D.E.37 ¶ 58; 62 at 7-8), and Wells Fargo has offered no evidence that *any* class member lacks a contractual relationship with WFB. Indeed, WFB's right to force-place insurance derives in the first instance from its contract with the mortgagor. *See* Section II.B, *supra.* This same argument was rejected by the court in *Williams,* 2012 WL 566067, at *6 (certifying class over Wells Fargo's argument that some class members were not in privity with Wells Fargo because Wells Fargo serviced their loans), and by this Court in denying Defendants' motion to dismiss Plaintiff's unjust enrichment claim against WFB. (D.E. 64 at 11-12). Further, neither Plaintiff nor any class member is bound by contract to WFI. (D.E. 37 ¶¶ 27, 32-33).

## VI.    PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE.

Wells Fargo does not dispute that Plaintiff Kunzelmann is an adequate representative of the Florida sub-class. However, Defendants argue that Plaintiff is not adequate to represent the nationwide class because, by electing to bring only unjust enrichment claims, Plaintiff is "claim trimming," thereby precluding the "non-Florida putative class members with mortgage contracts from recovery at all." (D.E. 70 at 26). Wells Fargo's concern that class members prosecute all possible claims against it is misplaced. Wells Fargo relies on cases in which a named plaintiff "trimmed" the relief sought to protect his or her own interests over those of the class, for

14

example, pursuing only a claim for injunctive relief where some absent class members had strong claims to monetary damages. *See, e.g., In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 339-40 (S.D.N.Y. 2002); *Western States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002); *cf. In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 669 (D. Kan. 2004) (distinguishing *In re MTBE* and *W. States Wholesale* "in that they involved actions where the class representatives had left aside the far stronger claims for monetary damages and sought to have the weaker claims certified, for dubious strategic purposes") (quoting *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64 (M.D. Tenn. 2004)).  Here, Plaintiff has tailored his claims to *best* serve the interests of the entire class, seeking the same monetary damages for unjust enrichment on behalf of the nationwide class as he does with his Florida implied covenant claim, (D.E. 37 ¶¶ 58, 79, 86), and limiting the implied covenant claim to Florida because of variances in state law.  *See Sullivan v. Chase Inv. Servs. of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978) ("The fact that class counsel have not tried to press claims … which they believe (and justifiably so) are unsuitable for class treatment does not make them inadequate.  To the contrary, that is the proper course for them to take.").  "This is not a case where the class representatives are pursuing relatively insignificant claims while jeopardizing the ability of class members to pursue far more substantial, meaningful claims." *In re Universal Serv. Fund*, 219 F.R.D. at 669.

Even if this Court finds that a final judgment in this case may affect absent class members' future claims arising from their mortgage contracts, the Court may order that the class notice disclose any claims that are not being asserted and explain the risk of preclusion, so that they may opt out and pursue any individual claims they may hold.  *See* Fed. R. Civ. P. 23(b)(3).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order granting Plaintiff's Motion for Class Certification.

Respectfully submitted,

s/   Adam M. Moskowitz

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>rn@kttlaw.com<br>**KOZYAK, TROPIN, &**<br>**THROCKMORTON P.A.**<br>2525 Ponce de Leon Blvd. 9th Floor<br>Coral Gables, FL 33134<br>Telephone: 305-372-1800<br>Facsimile: 305-372-3508<br>*Counsel for Plaintiff* | Lance A. Harke, Esq.<br>lharke@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>Sarah Engel, Esq.<br>sengel@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone: 305-536-8220<br>Facsimile: 305-536-8229<br>*Counsel for Plaintiff* |
| Jeffrey N. Golant, Esq.<br>jgolant@jeffreygolantlaw.com<br>**LAW OFFICES OF JEFFREY N.**<br>**GOLANT, P.A.**<br>1000 W. McNab Road, Suite 150<br>Pompano Beach, FL 33069<br>Telephone: 954-942-5270<br>Facsimile: 954-942-5272<br>*Counsel for Plaintiff* | Chip Merlin, Esq.<br>cmerlin@merlinlawgroup.com<br>Mary E. Fortson, Esq.<br>mfortson@merlinlawgroup.com<br>Sean M. Shaw, Esq.<br>sshaw@merlinlawgroup.com<br>**MERLIN LAW GROUP, P.A.**<br>777 S. Harbour Island Blvd., Suite 950<br>Tampa, FL 33602<br>Telephone: 813-229-1000<br>Facsimile: 813-229-3692<br>*Counsel for Plaintiff* |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on the 19th day of July, 2012 and served by the same means on David B. Esau, Esq., desau@carltonfields.com, and Michael K. Winston, Esq., mwinston@carltonfields.com, Carlton Fields, PA, City Place Tower, 525 Okeechobee Blvd., Suite 1200, West Palm Beach, FL 33401.

By:  s/ Adam M. Moskowitz___