UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:11-cv-81373-DMM

MARK KUNZELMANN;
on behalf of himself and all others
similarly situated;

    Plaintiff,

v.

WELLS FARGO BANK, N.A., and
WELLS FARGO INSURANCE, INC.

    Defendants.
_____/

**NOTICE TO COURT OF MISREPRESENTATIONS
IN PLAINTFF'S CLASS CERTIFICATION REPLY BRIEF**

    Defendants Wells Fargo Bank, N.A. ("WFB") and Wells Fargo Insurance, Inc. ("WFI") (collectively, "Defendants") are compelled to submit this filing in response to what appears to be an intentional effort by Plaintiff to mislead this Court. Specifically, in his reply brief [D.E. 80], Plaintiff makes multiple misrepresentations regarding the factual record in this case.

    For example, in response to Defendants' argument that class-wide injury is impossible to determine without an analysis of how the broker commissions *actually* affected the filed rates in all 50 states (and in an effort to distinguish *Virgilio v. Ryland Group*, 680 F.3d 1329 (11th Cir. 2012)), Plaintiff represents to the Court that David Franske, WFI's corporate representative, "testified at his deposition that cancelling the 11% commission to Assurant would, in fact, 'reduce the rates that [Assurant] charge[es] to Wells Fargo borrowers by equivalent amounts[.]' (D.E. 70-6 at 40:9-19)." D.E. 80, at 3. This statement is a blatant mischaracterization of Mr. Franske's testimony.

    The *actual* quote from Mr. Franske's testimony is as follows:

> Q. Have you had discussions at all with Assurant or with QBE, saying to them we're not going to get the 11 percent commission, can you now consider lowering the lender-placed premiums? A. Yes. Q. Okay. And what are those discussions? A. I've asked both of those insurance providers to reduce the rates that they're charging to Wells Fargo borrowers by equivalent amounts since those insurers are not going to

>have the expense of the commission. Q. Have you asked them to reduce it directly by 11 percent? A. I have, yes. Q. And what has been their response? A. Assurant had said they would attempt to do that in most states. QBE has said they would not.

Docket Entry 70-6, at 40:9-25. Thus, contrary to Plaintiff's representations to the Court, Mr. Franske did <u>not</u> testify that cancelling the commission would <u>in fact</u> reduce the filed-rates or the premiums that are charged by 11%. Rather, he testified that, in his role as an insurance broker, he asked Assurant to reduce its LPI rates, and that Assurant indicated that it would <u>attempt</u> to do so <u>in most states</u>, and QBE said it would not do so at all.

In addition to misrepresenting Mr. Franske's testimony, Plaintiff knows that his argument on this issue is factually inaccurate. Specifically, just one day before filing his reply, Plaintiff took the deposition of an Assurant officer, and specifically questioned him about this very topic -- asking what Assurant intended to do with its LPI rates after WFI no longer accepted broker commissions from Assurant. Plaintiff apparently elected not to include that testimony in his reply brief because, in direct conflict with his argument, Assurant testified that it has not changed its LPI program since it stopped paying broker commissions to WFI. *See* **Exhibit A**, at 139-141.

Additionally, Plaintiff's counsel marked as an exhibit to the Assurant deposition a declaration from an Assurant employee (which was prepared for another case), in which the employee testified affirmatively that:

>***[t]he same filed and approved premium rate is charged to all insureds*** *for flood coverage placed with the policy forms used for the Policy **regardless of any commissions that may be paid by [Assurant] to producers who may originate such a policy***.

*See* **Exhibit B**, at ¶ 10 (emphasis added) (which was marked as Exhibit 12 to the Assurant deposition transcript). When questioned whether the same is true with respect to hazard LPI policies, Assurant's representative responded affirmatively. **Exhibit A**, at 187. Thus, contrary to Plaintiff's representations to the Court, the evidence in this case demonstrates that, even without the 11% commission to WFI, Wells Fargo Bank (and subsequently, the putative class members) may have been charged the same LPI premiums that they were charged when the commissions were included in the filed-rates.[1] In any event, this causation and damages analysis

---

[1] This is likely true, at least in part, because Assurant's rate-filings are not specific to WFI – they also include commissions paid to dozens of other brokers across the country.

would require a rate-specific, state-specific, and borrower-specific analysis to determine how the premiums were <u>actually</u> affected (if at all) by the existence of the WFI commissions.

Finally, although Plaintiff's reply is littered with other mischaracterizations about the record here[2] and in the *Williams* litigation, and with case citations containing inaccurate parenthetical descriptions (including an entirely inaccurate description of *Virgilio v. Ryland Group*, 680 F.3d 1329 (11th Cir. 2012)), the Defendants would be remiss not to point out that Plaintiff's characterizations about Mr. McKinley's testimony are also entirely wrong.

Plaintiff argues that "the central allegation in this case is that WFB ultimately pays $0.89 for every dollar it charges its borrowers, a practice its own expert says is 'not appropriate.'" Reply, at 12.  Apart from garbling the factual record in this case regarding the manner in which Assurant charges its filed rates to Wells Fargo *Bank*, and in which Assurant separately pays its insurance broker (Wells Fargo *Insurance*) a commission, and apart from misquoting Mr. McKinley (who did not actually use the quoted phrase "not appropriate"), Plaintiff's argument mischaracterizes the entire nature of Mr. McKinley's testimony. As demonstrated in the transcript attached hereto as **Exhibit C**, Mr. McKinley *actually* testified, in response to a hypothetical question, that it would be inappropriate for Wells Fargo Bank to mark-up a filed rate and then charge borrowers more than the premium that it was charged by Assurant. *See id*., at 61-62.  But there is no dispute on that point, nor is there anything in the record in this case that even suggests that Wells Fargo Bank engaged in that conduct (as Mr. McKinley points out in his testimony – *see id*.). Suggesting that Mr. McKinley somehow tacitly endorsed Plaintiff's theory of this case is wrong and disingenuous.

---

[2] In fact, Plaintiff simply makes up entire sets of facts to suit his needs.  For example, Plaintiff argues that res judicata, collateral estoppel, merger, and the *Rooker-Feldman* defenses are not applicable against putative class members who have had state court judgments entered against them "because the issues in this action...were not before the state courts that entered those judgments" [Reply, at 9], but Plaintiff has no way of knowing whether these issues were *actually* before the state courts.  In fact, undersigned counsel has specifically litigated these exact issues in Florida state court actions. Plaintiff also argues (out of thin air) that borrowers were not informed that they would be charged a commission for an LPI policy, but the undisputed evidence demonstrates that Mr. Kunzelmann himself was warned, multiple times in writing, that he would be charged a commission for an LPI policy. Moreover, Plaintiff's lack of precision by repeatedly (and seemingly intentionally) conflating WFI with WFB (even though they are separate and distinct legal entities) and by confusing how the commissions here were actually paid (and by whom), and by promising proof that he does not have (Reply, at 3 ("Plaintiff will offer evidence of this bad faith conduct")) is startling, and illustrates some of the serious problems with his case-theory.

>                           **CARLTON FIELDS, P.A.**
>                           525 Okeechobee Blvd., Suite 1200
>                           West Palm Beach, Florida 33401
>                           Telephone: (561) 659-7070 / Fax: (561) 659-7368
>
>                           By:    */s/ David B. Esau*
>                                  Michael K. Winston (FBN 051403)
>                                  mwinston@carltonfields.com
>                                  David B. Esau (FBN 650331)
>                                  desau@carltonfields.com
>
>                           *Attorneys for Defendants Wells Fargo Bank,*
>                           *N.A. and Wells Fargo Insurance, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will provide electronic service and notification to the recipients on the attached service list.

>                           */s/ David B. Esau*
>                           David B. Esau

**SERVICE LIST**

| | |
|---|---|
| Lance Harke, Esq.<br>Sarah Engel, Esq.<br>Howard Busman, Esq.<br>**Harke, Clasby & Bushman, LLP**<br>155 S. Miami Avenue, Suite 600<br>Miami, FL 33130<br>Tel: 305-536-8220 / Fax: 305-536-8229<br>*Counsel for Plaintiff*<br>By Notice of Electronic Filing | Adam Moskowitz, Esq.<br>Rachel Sullivan, Esq.<br>Robert Neary, Esq.<br>**Kozyak Tropin & Throckmorton, P.A.**<br>2525 Ponce de Leon, 9th Floor<br>Coral Gables, FL 33134<br>Tel: 305-372-1800 / Fax: 305-372-3508<br>*Counsel for Plaintiff*<br>By Notice of Electronic Filing |
| Jeffrey N. Golant, Esq.<br>1000 W. McNab Rd., Ste. 150<br>Pompano Beach, FL 33069<br>Tel: 954-942-5270 / Fax: 954-942-5272<br>*Counsel for Plaintiff*<br>By Notice of Electronic Filing | Chip Merlin, Esq.<br>Mary E. Fortson, Esq.<br>Sean M. Shaw, Esq.<br>**Merlin Law Group**<br>777 S. Harbour Island Blvd.<br>Tampa, FL 33602<br>Tel: 813-229-1000 / Fax: 813-229-3692<br>*Counsel for Plaintiff*<br>By Notice of Electronic Filing |